IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VINCENT RODRIGUEZ, individually and on behalf of all others similarly situated persons, | ) ) ) | CASE NO.:  4:20-cv-3106 |
| | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL DECLARATORY SUMMARY JUDGMENT** |
| GC PIZZA LLC d/b/a "Domino's Pizza" and GREGORY CUTCHALL, individually, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**COME NOW**, Defendants, GC Pizza LLC d/b/a "Domino's Pizza", and Gregory Cutchall, individually (collectively "Defendants"), by and through their counsel of record, Engles, Ketcham, Olson & Keith, P.C., pursuant to Feder Rule 56, Local Rules 7.1(a)(1)(A) and 56.1 and submits this Brief in Support of Defendants' Motion for Partial Declaratory Summary Judgment.

## <u>INTRODUCTION</u>

This case concerns the proper method by which to measure costs incurred by an employee in the use of a personal vehicle while in the course and scope of employment for purposes of compliance with the minimum wage standards set forth in the Fair Labor Standards Act. 29 U.S.C. § 201 *et seq*. ("FLSA"). Under the FLSA, an employer must ensure that its employees earn a cash wage at the federal minimum ($7.25/hour) in any given workweek. The Department of Labor ("DOL") has issued regulations to guide employers in ensuring compliance with the FLSA. Principal among these regulations, as it concerns the facts alleged in Plaintiff's Third Amended Complaint, is the anti-kickback regulation found at 29 C.F.R. § 531.35. In general, the regulation states that if an employee provides the tools of the trade (i.e. vehicle) for the benefit of the employer the cost of using those tools ("COT") must be taken against the cash wage ("CW"). It further states that if the cost of tools causes the employee's cash wage to fall below the federal minimum the employer must reimburse ("R") the employee an amount equal to or greater than the difference. Stated as a formula, the anti-kickback regulation requires: CW-COT+R ≥ $7.25/hour (the federal minimum wage). The majority of District Courts have adopted the Reasonable Approximation

1

Standard as an acceptable method for an employer to calculate employee expense and so should this Court.

Defendant, GC Pizza, LLC., ("GC") employed Plaintiff as a pizza delivery driver for roughly four months, during the period between October 8, 2018, and February 24, 2019. During that period, GC paid Plaintiff a direct wage of no less than $7.25/hour, while claiming a $1.75/hour tip credit, and a flat rate reimbursement of no less than $2.00 per order for vehicle ("tool of the trade") expenses[1]. As Defendants understand Plaintiff's Third Amended Complaint, Plaintiff alleges the cost of his employment-related vehicle expenses exceeded $2.00 per order and resulted in a "kickback" of the differential to Defendants which caused his cash wage to drop below the federal minimum. Plaintiff has brought a collective action against the Defendants pursuant to 29 U.S.C. § 216(b).

The DOL regulations do not require an employer to track the employee's actual expense in order to comply with the FLSA. Under the regulations, an employer may reasonably approximate its employee's actual expense for reimbursement and that is what GC, as Plaintiff's employer, did with its $2 flat rate. Under the FLSA, it is Plaintiff's burden to prove that GC's reasonable approximation of his expense caused his wages to fall below the federal minimum wage. The burden is placed on the employee because the employee is in the best position to know the actual costs of his vehicle-related expenses. Yet, to date, Plaintiff has neither alleged nor produced any evidence of what those costs were. Instead, the Third Amended Complaint proffers a guess of miles driven per delivery and improperly relies on the Internal Revenue Service mileage reimbursement rate for business expense deductions ("IRS rate") as the controlling benchmark cost of vehicle-related expenses associated with pizza deliveries.

Whether GC's flat-rate $2.00 per order reimbursement policy reasonably approximated Plaintiff's actual expense is a disputed material fact and Defendants do not intend to raise that issue in the present Motion. Instead, Defendants request the Court decide specific questions of law and enter summary judgment as follows:

(1)  Adopting the Reasonable Approximation Standard for purposes of compliance with the FLSA minimum wage requirement through the anti-kickback regulation. 29 C.F.R. § 531.35;

---

[1] $2.00 per order means that if a delivery driver took three orders on one trip the driver would receive $6.00 for delivery reimbursement.

(2)   Declaring that an individual employee's actual employment related vehicle expense— not the optional IRS rate— is the measure for FLSA minimum wage compliance through the anti-kickback regulation. 29 C.F.R. § 531.35;

(3)   Declaring the standard of proof in this case is preponderance of the evidence and that in order to prove a FLSA violation Plaintiff, and any other similarly situated employee, must prove GC failed to reimburse actual expense or GC's reimbursement policy failed to reasonably approximate his actual expense, **and** that a resulting under-reimbursement caused the cash wage to fall below the federal minimum; and

(4)   Declaring that if Plaintiff, and any other similarly situated employee, fails to satisfy his burden of proof, and Defendants prevail in this litigation, Defendants are entitled to their costs.

These questions of law are ripe for summary declaratory judgment and the resolution of these questions is necessary for efficient discovery and to move the case forward in an efficient and fair manner.

## SUMMARY OF ARGUMENT

Under the FLSA, GC may reasonably approximate its delivery drivers' actual employment-related vehicle expense. This position is consistent with the FLSA text, DOL regulations, official DOL guidance, the decisions of several district courts, policy goals, and common sense.

Moreover, under that reasonable approximation standard, the proper benchmark for determining whether GC's reimbursement policy reasonably approximated Plaintiff's expense is Plaintiff's actual expenditure—not the IRS rate. The IRS rate is an optional safe harbor and not a statutory or regulatory requirement an employer must use to reimburse an employee under the anti-kickback regulation to comply with the FLSA.

It is Plaintiff's burden to prove, by a preponderance of the evidence, that GC's reimbursement policy did not reasonably approximate his actual employment-related vehicle expenses, **and** that the resulting under reimbursement—if any—caused his wages to drop below the federal minimum. If Plaintiff fails to prove both elements, Defendants are entitled to costs incurred pursuant to the prevailing law of the Eighth Circuit.

## LEGAL STANDARDS

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact, and the moving

party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Serv., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) [citing Fed. R. Civ. P. 56(c)]. The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

Summary judgment is not disfavored and is designed for every action. *Baouch v. Werner Enterprises, Inc.*, 244 F. Supp. 3d 980, 989 (D. Neb. 2017), aff'd, 908 F.3d 1107 (8th Cir. 2018) (internal quotations omitted). In reviewing a motion for summary judgment, the Court will view the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor. *Id.* The moving party need not produce evidence showing "the absence of a genuine issue of material fact. *Id*. at 990. Instead, the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case. *Id*.

## STATEMENT OF MATERIAL FACTS

1. GC employed Plaintiff as a pizza delivery driver during the period between October 8, 2018, and February 24, 2019. (Exhibit I, ¶ 5)

2. During Plaintiff's employment period, GC paid Plaintiff a wage of $9 per hour, the Nebraska minimum. (Exhibit B).

3. During Plaintiff's employment period, GC paid Plaintiff a cash wage at the Federal minimum of $7.25 per hour, while claiming a $1.75 tip credit of per hour. *Id.*

4. Upon hiring Plaintiff, pursuant to 29 C.F.R. § 531.59, GC made Plaintiff aware of Plaintiff's cash wage, GC's claim of the tip credit, Plaintiff's overtime wage calculation (cash wage + tip credit), GC's tip reporting policy, and Plaintiff's right to keep all tips. (Exhibits A; Exhibit I, ¶¶ 6-9).

5. During Plaintiff's employment period, to compensate Plaintiff for the business use of his personal vehicle, GC paid Plaintiff an additional $2.00 per order. (Exhibit B).

6. On or about August 2020, The Domino's Franchise Association ("DFA"), of which the defendants belong, suggested that member franchisees move to a per-mile third-party mileage reimbursement program. (Exhibit C; Exhibit I, ¶¶ 12-13).

4

7. The third-party vendor that the DFA recommended to CG was Motus LLC. ("Motus"), who offers a fixed and variable rate ("FAVR") delivery reimbursement program. (Exhibit E; Exhibit J, ¶¶ 6-8).

8. Defendants enrolled in Motus, through the DFA portal, on or about August 6, 2020, and maintained that enrollment to present day. (Exhibit D; Exhibit I, ¶¶ 14-16).

9. On September 9, 2020, Plaintiff, Vincent Rodriguez, filed a complaint, individually and on behalf of those similarly situated, in the United States District Court for the District of Nebraska. (Doc. #1).

10. Plaintiff alleged that Defendant's flat-rate per order reimbursement policy results in a "per-mile reimbursement far below the IRS [rate] or any other reasonable approximation of the cost to own or operate a motor vehicle." (Doc. #42, ¶ 16).

11. Plaintiff alleged Defendant's policy resulted in a $2.00.54 per hour kickback. (Doc. #42, ¶ 33).

12. To arrive at that figure, Plaintiff assumes the IRS rate at $0.545 per mile, and an average of 2 deliveries per hour and 6 miles per delivery. (Doc. #42, ¶¶ 29-32).

13. Plaintiff alleged Defendant's reimbursement policy of $2.00 per delivery resulted in a per mile reimbursement of $0.33 (2/6 = 0.333). (Doc. #42, ¶¶ 29-32).

14. Based on the IRS rate, Plaintiff alleged a per mile reimbursement deficit of $0.212 (0.545-0.333 = 0.212). (Doc. #42, ¶¶ 29-32).

15. Next, Plaintiff alleged a reimbursement deficit of $1.27 per delivery [0.212(6) = 1.27]. (Doc. #42, ¶¶ 29-32).

16. Finally, Plaintiff converted the alleged per delivery figure into an hourly reimbursement deficit of $2.00.54 per hour [1.27(2) = $2.00.54] and alleged a subminimum wage of $6.46 [9-2.54 = 6.46]. (Doc. #42, ¶ 33).

17. Defendants maintain that GC reimbursement policy reasonably approximated Plaintiff's actual employment related vehicle expense throughout Plaintiff's term of employment.

18. On November 16, 2021, this court entered its Findings and Recommendations in response to Plaintiff's Motion for Conditional Certification of the collective action under the FLSA. (Doc. #68).

19. On November 30, 2021, Defendants filed their Objections to this court's November 16, 2021, Findings and Recommendations, Doc. #68, on the basis that, *inter alia*, Plaintiff's proposed

Notice to the putative class, which this court approved, did not include language warning potential opt-in plaintiffs of the possibility of fee shifting. (Doc. #69, pp. 12-14).

20. On December 12, 2021, Plaintiff replied to Defendants' Objections, Doc. #69, stating: "[o]minously, while Defendants' demand a warning of fee-shifting, Defendants' fail to even mention that the FLSA does not allow fee-shifting in favor of prevailing Defendants." (Doc. #72, pp. 18).

## ARGUMENT

Plaintiff alleges that GC's flat-rate reimbursement of $2.00 per order was an under-reimbursement and caused his direct wage to fall below the federal minimum. To support his allegations Plaintiff has produced no evidence of costs he incurred while delivering pizzas. Instead, the Third Amended Complaint speculates as to how many miles he drove per delivery, how many deliveries he made per hour, and presumes the IRS rate is the authoritative measure of costs associated with personal vehicle use. Using this approach Plaintiff alleges an hourly wage deficit; however, Plaintiff's approach to calculating the cost of personal vehicle use is flawed and not controlling.

The IRS Rate is an improper benchmark to measure an employee's actual expense of using a personal vehicle under the anti-kickback regulation. The IRS rate and the FLSA minimum wage requirements are directed at different factual circumstances, are rooted in two different statutory schemes, are governed under two different bodies of authority, and have completely different policy goals attached to them. The FLSA only requires employers reasonably approximate the *actual expense* of the employee and merely offers the IRS rate as a "safe harbor" measure that employers can use to show compliance. However, there is no statutory requirement that an employer must use the IRS rate or specifically track an employee's expenses in order to comply with the FLSA. In fact, the IRS rate could result in over-reimbursement of employees.

Plaintiff bears the burden of proof in this litigation. In order to make a *prima facie* case Plaintiff must prove, by a preponderance of the evidence, that (1) GC's reimbursement policy did not reasonably approximate Plaintiff's actual employment related vehicle expense; **and** (2) the resulting under-reimbursement, if any, caused Plaintiff's cash wage to fall below the federal minimum. If Plaintiff fails to meet his burden Defendants are entitled to recover the costs incurred defending this litigation.

6

I.       **THE REASONABLE APPROXIMATION STANDARD APPLIES.**

DOL regulations implementing the FLSA afford an employer choice when it comes to the reimbursement of employee vehicle expenses. The employer may: (1) track employee expense and reimburse the actual amount, (2) reasonably approximate the employee expense and reimburse based on that approximation, (3) reimburse the employee at the safe harbor IRS rate. GC, as it was allowed to do, reasonably approximated Plaintiff's vehicle expense using a flat-rate reimbursement of $2.00 per order. Neither GC nor Plaintiff tracked Plaintiff's actual vehicle expense, nor did GC reimburse Plaintiff at the "safe harbor" IRS rate. GC's reasonable approximation of Plaintiff's expense at $2.00 per order was consistent with the regulations applicable to the FLSA.

Whether the $2.00 per order flat-rate reimbursement was a reasonable approximation of Plaintiff's expense remains, for now, a question of fact not presently before the Court on this Motion. However, whether FLSA allows GC to reasonably approximate employee expense, as opposed to specifically tracking Plaintiff's actual vehicle expense or reimbursing at the "safe harbor" IRS rate, is a question of law and ripe for decision by this Court. Neither this Court nor the Eighth Circuit have specifically adopted the reasonable approximation standard in FLSA reimbursement disputes; however, because Plaintiff's Third Amended Complaint improperly conflates the IRS rate with "reasonably approximate" this Court should do so now so that this case can proceed to resolution. Accordingly, Defendants respectfully request a declaratory summary judgment that the FLSA allowed GC to reasonably approximate Plaintiff's expenses and did not required GC reimburse Plaintiff at the optional IRS "safe harbor" rate.

A. **DOL Regulations Unambiguously Allow an Employer to Reasonably Approximate Employee Expense.**

The FLSA is silent on the subject of reimbursements. Yet "[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 843 (1984) (internal quotations omitted). The DOL, the agency tasked with rulemaking and enforcement of the FLSA's minimum wage [29 U.S.C. § 206(2)], set forth regulations regarding reimbursements to effectuate the policy goals of the federal minimum wage. The DOL's "construction of a statutory scheme it is entrusted to administer" is given "considerable weight." *Chevron*, at 844, 104 S. Ct. at 2782.

7

The anti-kickback regulation, 29 C.F.R. 531.35, upon which Plaintiff bases his claim, is intended to ensure an employee received the minimum wage under the FLSA. There is a straight line from the anti-kickback regulation to 29 C.F.R. § 778.217 which allows an employer to reasonably approximate the employee's actual expense.

Regarding enforceability of a regulation, "[a]s an initial matter, the Court must determine whether 29 C.F.R. § 531.35 [anti-kickback rule] is genuinely ambiguous." *Bradford v. Team Pizza, Inc.*, No. 1:20-CV-60, 2021 WL 2142531, at *6 (S.D. Ohio May 26, 2021), report and recommendation adopted, No. 1:20-CV-00060, 2021 WL 4860600 (S.D. Ohio Oct. 19, 2021) (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)). "And before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction. *Id.* [citing: *Chevron* at 843, n. 9 (adopting the same approach for ambiguous statutes)]. "[W]hen 'the meaning of [a regulation] is in doubt,' the agency's interpretation 'becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Kisor v. Wilkie*, 139 S. Ct. 2400, 2411 (2019) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)). But "[i]f uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect . . ." *Kisor* at 2415.

29 C.F.R. § 531.35, read in concert with 29 C.F.R. § 778.217, permits an employer to reasonably approximate the expenses an employee incurs on his employer's behalf. *See Kennedy v. Mountainside Pizza, Inc.*, No. 19-CV-01199-CMA-STV, 2020 WL 5076756 (D. Colo. Aug. 26, 2020); *Bradford v. Team Pizza, Inc.*, No. 1:20-CV-60, 2021 WL 2142531 (S.D. Ohio May 26, 2021), report and recommendation adopted, No. 1:20-CV-00060, 2021 WL 4860600 (S.D. Ohio Oct. 19, 2021); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 722 (E.D. Mo. 2015); *see also Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282 (D. Kan. 2010); *Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261 (N.D. Ga. 2019); *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139 (N.D. Ala. 2018); *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2011 WL 2174496 (D. Colo. June 3, 2011); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2011 WL 2791331 (D. Colo. July 14, 2011); *Koral v. Inflated Dough, Inc.*, No. 13-CV-02216-WYD-KMT, 2014 WL 4904400 (D. Colo. Sept. 29, 2014).

As discussed above, the DOL's anti-kickback regulation provides that the minimum wage must be paid 'finally and unconditionally' or 'free and clear.' *See* 29 C.F.R. § 531.35. Further,

> "[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. *See also in this connection*, § 531.32(c)."

29 C.F.R. § 531.35 (emphasis supplied).

In the pizza delivery driver context, the "cost" of the tools of the trade are the expenses associated with a delivery driver's personal vehicle. *Bradford*., No. 1:20-CV-60, 2021 WL 2142531, at *6; *See also Kennedy.*, at *2; *Deli Mgmt.*, *Inc.*, 396 F. Supp. at 1273; *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018); *Graham v. Word Enterprises Perry, LLC*, No. 18-CV-0167, 2018 WL 3036313, at *4 (E.D. Mich. June 19, 2018).

Section 531.32(c) states that "the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." *See Bradford*., No. 1:20-CV-00060, 2021 WL 4860600, at *3 [quoting: 29 C.F.R. § 531.32(c)]. The section concludes with a direct reference to § 778.217, which explicitly allows for the reasonable approximation of employee expense incurred on behalf of the employer:

> "Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, § 7(e)(2) [which provides that employee's regular rate does not include travel or other expenses incurred in furtherance of the employer's interest] is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement **reasonably approximates** the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek . . . Payment by way of reimbursement for the following types of expenses will not be regarded as part of the employee's regular rate: . . . The actual or **reasonably approximate** amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private car or common carrier) and . . . other travel expenses . . . incurred while traveling on the employer's business."

*See Kennedy*., No. 19-CV-01199-CMA-STV, 2020 WL 5076756, at *2-*3 [quoting: 29 C.F.R. § 778.217(a)–(b)] (emphasis supplied in opinion).

The anti-kickback regulation [29 C.F.R. § 531.35] specifically incorporates by reference § 531.32(c) ("See also in this connection"), which in turn incorporates § 778.217 ("For a discussion of reimbursement for expenses such as . . . 'travel expenses,' etc., see § 778.217 of this chapter").

*See Kennedy*, No. 19-CV-01199-CMA-STV, 2020 WL 5076756, at \*2 (discussing the direct connection between §§ 531.35 and 778.217).

The regulations applicable to the FLSA are unambiguous: an employer may reasonably approximate its employees' expense incurred on the employer's behalf—in lieu of tracking the employee's actual expenses—for the purposes of reimbursement. *See Perrin*, at 721; *see also Bradford.*, No. 1:20-CV-00060, 2021 WL 4860600, at \*4 ("the text and structure of 29 C.F.R. § 531.35—which incorporates 29 C.F.R. § 531.32(c), which in turn incorporates 29 C.F.R. § 778.217—is not genuinely ambiguous as it relates to the costs associated with a pizza delivery driver operating a vehicle for work").

GC was not required to track and reimburse Plaintiff's expense, nor was GC required to reimburse Plaintiff at the "safe harbor" IRS rate, in order to comply with the FLSA. Regulations implementing the FLSA are unambiguous and allowed GC to reasonably approximate Plaintiff's actual expenses incurred delivering pizza for GC and still comply with the FLSA. Pursuant to *Kisor*, there is no plausible reason for deference to DOL interpretations of the anti-kickback regulation as it pertains to reimbursements; "the regulations just mean what they mean—and [this] court must give them effect." *See Kisor*, 139 S. Ct. at 2415. The meaning of the DOL regulations implementing the FLSA present a question of law ripe for decision by this Court. As such, Defendants respectfully request an order declaring, as a matter of law, that reasonable approximation standard is a proper method by which an employer may measure an employee's costs incurred in the use of a personal vehicle for purposes of compliance with the anti-kickback rule.

### B. *Hatmaker* was Wrongly Decided and Soundly Rejected.

In opposition to this Motion, Plaintiff will likely direct this Court to *Hatmaker* and *Waters*. *See, infra*, *Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019); *Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785 (S.D. Ohio 2021). Defendants anticipate Plaintiff will argue that the DOL regulations are ambiguous and argue the DOL's Wage and Hour Div., Field Operations Handbook § 30c15 (2000) ("FOH") should receive deference over a recent DOL Opinion letter that rejected *Hatmaker*. *See* DOL Opinion Letter FLSA2020-12, 2020 WL 5367069 ("DOL Opinion").

*Hatmaker* and *Waters* were two opinions from one Judge in the Southern District of Ohio, and they are lonely opinions in rejecting the reasonable approximation standard. Those opinions

are based on a strained application of *Kisor* and a misreading of the FOH. Both *Hatmaker* and *Waters* were wrongly decided, and this Court should disregard them.

### 1. *Hatmaker's* Holding.

*Hatmaker* was a decision entered by Judge Thomas M. Rose of the United States District Court for the Southern District of Ohio. *Hatmaker* relied heavily on the FOH and a strained interpretation of *Kisor*. *See supra*, *Kisor*, 139 S. Ct. 2400. The court found § 531.35 was ambiguous without even addressing § 778.217. To do so the court misapplied the *Kisor, Auer v. Robbins*, 519 U.S. 452 (1997)*, and Skidmore v. Swift & Co*., 323 U.S. 134 (1944) decisions and adopted a gross misreading of the FOH. Ultimately, the court's decision rested on an unsupported policy of its own making:

> As a general principle, employers are not permitted to 'guess' or 'approximate' a minimum wage employee's expenses for purposes of reimbursing the expenses. This would result in some employees receiving less than minimum wage, contrary to the FLSA mandate. Instead, as a general proposition, the FLSA requires employers to pay back the actual expenses incurred by the employees.

*Hatmaker* at *3. *Hatmaker's* finding that §531.35 was ambiguous is erroneous.

The *Kisor* decision substantially weakened agency deference and instructed lower courts to apply *Auer* only if (1) after "exhausting all traditional tools of construction," the regulation is "genuinely ambiguous"; (2) the agency interpretation is reasonable; and (3) the agency interpretation of its own regulation is of a "character and context . . . entitl[ing] it to controlling weight" (i.e., substantive expertise, **official agency position**, fair and considered judgment, consistency). *See Kisor* 139 S. Ct. at 2414-2418 (emphasis supplied).

Under the *Kisor* analysis, deference to the FOH fails at step one because the regulations are unambiguous on their face. Nevertheless, the court in *Hatmaker* manufactured ambiguity and applied a misreading of the FOH.

First, the court ignored the incorporation by reference of §§ 531.32(c) and 778.217 and found § 531.35 genuinely ambiguous. But the court did not waste ink on the matter—there is no actual analysis of §§ 531.32(c) and 778.217. Rather, the discussion centered on how the anti-kickback regulation, read in isolation, fails to instruct employers on methods of reimbursing employees. *Hatmaker* at *4. Tellingly, the court gave a lengthy explanation of why it believed the FOH "should" apply. *Hatmaker* at *4-6.

11

Second, to conform with its ideals of what the law should be, the court in *Hatmaker* misstated the FOH. That court replaced the word "may" stating: "in the absence of actual costs, the IRS mileage rate applies." *Id. Cf.* FOH § 30c15(a) ["the [IRS rate] **may** be used (in lieu of actual costs and associated recordkeeping)"] (emphasis supplied). This reconstruction of the FOH allowed the court to present the IRS as a "neutral arbiter" providing the IRS rate as "a clear directive for minimum wage compliance" and allowing employers "to avoid the substantial costs of keeping records of their employees' actual expenses." *Hatmaker* at *6. This reading may be in alignment with the court's own policy views but is in direct conflict with the text of the regulations and the FOH.

Third, the court correctly notes that "the FOH is not a regulation, but an interpretation of Department regulations that was not subject to the rigors of the Administrative Procedure Act, including public notice and comment; the Field Operations Handbook is therefore not controlling or entitled to deference." *Hatmaker* at *3 (internal quotations omitted). Nevertheless, the court applied a form of *Skidmore*, under the *Auer* standard, to find that the IRS rate—not the FOH—is "a data-driven and systematic methodology for estimating the cost of driving a mile." *Hatmaker* at *5. To support this finding the court relied on two website articles: "Julia Kagan, Standard Mileage Rate, Investopedia, (June 13, 2018)" and "Business Wire, (December 14, 2017, 3:13 PM)" *Id.*

*Hatmaker* concluded with a proclamation that: "[a]s a matter of law, that the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service." *Hatmaker* at *7. This conclusion is plainly inconsistent with the text of the DOL regulations and controlling caselaw regarding agency deference. *See Kisor, supra.*

## 2. The DOL Opinion Letter.

To address an employer's inquiry regarding the DOL's official position on reimbursements for delivery drivers—and, likely, to settle the inconsistent application of the regulations by various courts—the DOL released an Opinion Letter on August 31, 2020. The letter states the DOL's official opinion that an employer may (1) track and reimburse the employee's actual expense; (2) reasonably approximate the employee's actual expense; or (3) reimburse the employee at the *per se* reasonable IRS rate for purposes of FLSA compliance. *See* DOL Opinion Letter FLSA2020-12, 2020.

First, the DOL Opinion conducted a textual analysis of the anti-kickback rule and came to the same conclusion as countless courts had: § 531.35, the anti-kickback regulation, specifically incorporates § 531.32(c) ("See also in this connection"), which in turn incorporates § 778.217 ("For a discussion of reimbursement for expenses such as . . . 'travel expenses,' etc., see § 778.217 of this chapter") and § 778.217 states an employer may reimburse an employee the "actual or reasonably approximate amount" of the employees expense incurred. *See* DOL Opinion Letter FLSA2020-12, 2020 at 2-3; *See also Bradford* and *Kennedy*, *supra*.

The DOL Opinion states "the plain language of the regulations also allows employers to reasonably approximate an employee's expenses through methods other than the [IRS rate]." *Id.* at 3. They note that § 778.217(c)(2)(i) states that the reimbursement "must be the same or *less than* the maximum reimbursement payment permitted by the IRS rate." *Id.* (internal quotations omitted) (emphasis in original). "A regulation that explicitly allows employers to approximate expenses at a rate lower than the [IRS rate] cannot be read to require employers to use the [IRS rate]." *Id.* (rejecting *Hatmaker*) (citing *Sullivan*, 362 F. Supp. 3d at 1154-55, 1174; *Perrin* 114 F. Supp. 3d at 721-22).

Second, the DOL Opinion addresses the FOH. As a threshold matter, the DOL Opinion makes clear that the FOH "does not establish a binding legal standard on the public and is not a device for establishing interpretive policy." *Id.* at 4 (citing a disclaimer located on the publicly available version of the FOH). Further, the DOL Opinion corrects the *Hatmaker* reading, directing readers to the word "may" in the FOH: "Section 30c15's instruction that, as an enforcement policy, the IRS rate *may* be used (in lieu of actual costs and associated recordkeeping) . . . is discretionary." *Id.* (internal quotations omitted) (emphasis in original).

The DOL Opinion, however, is careful not to endorse any particular method of reimbursement as being a reasonable approximation. But, depending on the individual circumstances, the DOL Opinion states that a variety of methods—including flat-rate reimbursement—can satisfy the requirements of the reasonable approximation standard. *Id*. at 4-5. "The Wage and Hour Division neither approves nor disapproves of any of these methods . . . [t]he extent that some or all of these methods may reasonably approximate [the driver's actual expenses] under certain circumstances, they will comply with the Act." *Id*. at 5.

The DOL Opinion is the official position of the agency and consistent with that agency's past interpretation of the reimbursement regulations. It clarifies DOL regulations and establishes

13

the reasonable approximation standard as a proper means of reimbursement of employee expense for purposes of meeting the federal minimum wage standards under the FLSA. Further it rightfully leaves the individual questions of whether a particular method of reimbursement is a reasonable approximation to the finder of fact.

### 3.   Judge Rose's Rebuttal.

In yet another pizza delivery case in the Southern District of Ohio, Judge Rose had an opportunity to address the DOL's rejection of his opinion in *Hatmaker*. *See Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785 (S.D. Ohio 2021). In *Waters*, Judge Rose restates *Hatmaker* and includes his rebuttal: (1) the FLSA requires employers to keep records; (2) § 778.217 concerns overtime payments, not minimum wage compliance; (3) § 731.35 is ambiguous in not giving guidance on how to reimburse expense; (4) because § 731.35 is ambiguous, the FOH applies; (5) the DOL Opinion fails *Kisor*; and (6) the FOH satisfies *Kisor*. *See id.*

As a threshold matter, Judge Rose cites his own opinion in *Hatmaker* to find § 531.35 ambiguous and the FOH applicable. *Waters* at 795. *C.f., Bradford.*, *supra*, at \*4 ("the text and structure of 29 C.F.R. § 531.35—which incorporates 29 C.F.R. § 531.32(c), which in turn incorporates 29 C.F.R. § 778.217—is not genuinely ambiguous as it relates to the costs associated with a pizza delivery driver operating a vehicle for work").

Then, Judge Rose seems to suggest that because 29 U.S.C. § 211(c) and 29 C.F.R § 516.2(a)(10)-(11) require an employer to keep records regarding wages, the DOL Opinion, that an employer may reasonably approximate employee expense, is unreasonable. Moreover, Judge Rose concludes that his misreading of the FOH (i.e., either track expense or pay the IRS rate) is the only reasonable agency guidance available and deserves discretion over the DOL Opinion Letter. *Waters* at 795-796.

Further, to discredit the language of § 778.217, which § 531.35 references as guidance on reimbursement, Judge Rose erroneously states that § 778.217 does not govern minimum wage compliance. *Waters* at 797. Judge Rose, again, completely disregards the long legal practice of incorporation by reference. *See e.g., Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989) ("The ADEA, through incorporation of § 16(b), expressly authorizes employees to bring collective age discrimination actions 'in behalf of ... themselves and other employees similarly situated'") [quoting: FLSA 29 U.S.C. § 216(b)].

Finally, Judge Rose states: "[t]he Handbook reflects a reasoned determination that the [IRS rate] is an appropriate proxy for reimbursement when an employer fails to keep records. This is exactly the type of fact-specific issue that *Kisor* endorses as a proper area for agency interpretation. On the other hand, the [DOL Opinion] focuses on legal judgments that are contrary to court-established law." *Waters* at 798. Again, Judge Rose's analysis was incorrect as discussed below.

### 4.   A Majority of Districts Reject the Reasoning of *Hatmaker*.

A majority of district courts have adopted the reasonable approximation standard. *See supra*, Section I(A). Two opinions, however, stand out as most instructive: *Kennedy v. Mountainside Pizza*, from the District of Colorado, and *Bradford v. Team Pizza, Inc.*, from the Southern District of Ohio. The *Kennedy* decision was signed five days prior to the publication of the DOL Opinion; *Bradford* was signed roughly one year after that letter, and 19 days after Judge Rose's opinion in *Waters*.

In *Bradford*, the court had the DOL Opinion and *Kennedy* on one side of the debate, and *Hatmaker* and *Waters* on the other. Unsurprisingly, after a sound application of *Kisor*, the court in *Bradford* sided with *Kennedy* and the DOL Opinion. The court disagreed with that Plaintiff's argument, relying on *Hatmaker*, that "the failure of the regulation to explain how such costs should be calculated makes the regulation genuinely ambiguous such that resort to the longstanding-guidance of the FOH is warranted." *Bradford* at *7.

The court found the "anti-kickback regulation of 29 C.F.R. § 531.35 is not genuinely ambiguous because the plain language of the regulation incorporates by reference § 531.32(c), which in turn specifically incorporates § 778.217 [and] § 778.217 answers the question by which method should employee-provided tools of the trade expenses be reimbursed." *Id.* at *9. Consistent with *Kisor*, because the language of the regulation is not ambiguous, the court's inquiry stopped. *Id.*

Nevertheless, the court took the opportunity to address other arguments raised in that plaintiff's Motion. Foremost of these was the assertion that, should the court find § 531.35 unambiguous, the phrase "reasonable approximation" itself is ambiguous. Again, the court disagreed. *Id.* at *9-10.

First, the court noted that § 778.217 includes clarifying language as to what a reasonable approximation is. The court points to subsection (c)(1) ". . . If the amount paid as 'reimbursement'

is disproportionately large, the excess amount will be included in the regular rate;" and subsection (c)(2)(i):

> "A reimbursement amount for an employee traveling on his or her employer's business is *per se* reasonable, and not disproportionately large, if it: [i]s the same or less than the maximum reimbursement payment or per diem allowance permitted for the same type of expense under 41 CFR subtitle F (the Federal Travel Regulation System) or IRS guidance issued under 26 CFR 1.274–5(g) or (j)."

*Id.* at \*10 (quoting: 29 C.F.R. § 778.217(c)(2)(i). From this language, the court remarked "[t]he plain language of this section not only contemplates a reimbursement at less than the IRS rate, *see* § 778.217(c)(2)(i), it also explains that a reimbursement rate that is disproportionately large is not reasonable." *Id.*

Second, the court agreed with the court in *Kennedy* and found that the word "reasonable" is "firmly rooted in American jurisprudence to encompass a variety of circumstances based on the particular facts and circumstances of the case." *Id.* Further, "[c]ourts and juries are often called upon to determine whether an action is 'reasonable,' and the fact that a methodology for determining a reasonable approximation of reimbursement for expenses is not included in the regulation does not make the term "reasonable approximation" as used in § 778.217 genuinely ambiguous." *Id.* The court went on to quote a passage from *Kennedy*, explaining the same. *See id.* at \*11.

The court in *Bradford* concluded with a short statement that it was "mindful that another judge of [the District Court for the Southern District of Ohio] considered [the] same question and reached a different result." *Id.* But, it continued, "*Hatmaker* is not binding precedent on this Court, the Court respectfully declines to follow it." *Id.*

### 5.   Even If This Court Finds the Regulations Ambiguous, the DOL Opinion Letter Controls Under *Kisor*.

The regulations applicable to the FLSA unambiguously allow an employer to reasonably approximate employee expense for the purposes of reimbursement and minimum wage compliance. But should this court, nevertheless, find those regulations ambiguous and give deference to the DOL, the DOL Opinion is the agency's official position and controlling under *Kisor*. *See Bradford*, No. 1:20-CV-00060, 2021 WL 4860600, at \*2 (S.D. Ohio Oct. 19, 2021) [quoting: *Kennedy*, 2020 WL 5076756, at \*4-5 (citing: *Kisor*, 139 S. Ct. at 2415)] ("29 C.F.R. §

16

531.35 is not genuinely ambiguous and, even if it was, the August 2020 DOL Opinion Letter is the reasonable agency interpretation that would be entitled to controlling weight").

*Kisor* requires a court to "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." *Kisor*, 139 S. Ct. at 2416. "[T]he regulatory interpretation must be one actually made by the agency. In other words, it must be the agency's 'authoritative' or 'official position,' rather than any more *ad hoc* statement not reflecting the agency's views." *Id.* (noting that not everything the agency does comes from, or is even in the name of, the Secretary or his chief advisers)*.* Likewise, any agency guidance that disclaims authority is *ipso facto* ineligible for Auer deference. *See Kisor* at 2417 [citing: *Exelon Generation Co. v. Local 15, Int'l Brotherhood of Elec. Workers, AFL–CIO*, 676 F.3d 566, 576–578 (CA7 2012) (declining deference when the agency had itself "disclaimed the use of regulatory guides as authoritative")].

To receive *Auer* deference, the agency's interpretation must in some way implicate its substantive expertise and reflect fair and considered judgment. *Kisor* at 2417 (internal quotations omitted). Moreover, deference requires consistency; a court "may not defer to a new interpretation, whether or not introduced in litigation, that creates unfair surprise to regulated parties." *Kisor* at 2417–18. The DOL expressly disclaims the FOH as an authoritative source of agency policy, whereas the DOL opinion states official agency policy. Moreover, the DOL opinion is both reasonable and consistent with prior agency interpretation of the regulations applicable to the FLSA. Should this court find the regulations ambiguous, the DOL Opinion controls under *Kisor*.

First, the DOL Opinion is the agency's official position. The Wage and Hour Division issues guidance primarily through Opinion Letters, Ruling Letters, Administrator Interpretations, and Field Assistance Bulletins. *See* U.S. DOL Wage and Hour Division, https://www.dol.gov/agencies/whd/opinion-letters/request/existing-guidance (last visited February 2, 2022). "An interpretation . . . issued by the Administrator interpreting the Fair Labor Standards Act (FLSA) . . . is an official . . . interpretation of the Wage and Hour Division for purposes of the Portal-to-Portal Act. 29 U.S.C. § 259." *Id.* The Administrator of the Wage and Hour Division published the DOL Opinion through official channels. *See* https://www.dol.gov/sites/dolgov/files/WHD/opinion-letters/FLSA/2020_08_31_12_FLSA.pdf (last visited February 2, 2022). And the DOL Opinion is the official Wage and Hour Division interpretation of the anti-kickback regulation.

17

In contrast, the Wage and Hour Division developed the FOH under the general authority of the Administrator, to offer field investigators guidance on policies already established; the FOH "is **not** used as a device for establishing interpretive policy," and only available to the public through the DOL's obligations under the FOIA, 5 U.S.C. 552(a)(2). *See* https://www.dol.gov/agencies/whd/field-operations-handbook (last visited February 2, 2022) (emphasis supplied). The DOL never intended the FOH to serve as an official interpretation of regulations applicable to the FLSA, and the disclaimer stating as much immediately disqualifies the FOH from receiving deference. *See Kisor* at 2417; *See also Kennedy*, No. 19-CV-01199-CMA-STV, 2020 WL 5076756, at *5.

Second, the DOL Opinion is reasonable and represents a careful analysis of the employer's obligations under the anti-kickback regulation. The DOL Opinion draws on that agency's long history of balancing the employee's rights under the FLSA with the regulatory burden placed on employers. The methodology for compliance with the anti-kickback regulations is certainly within the purview of the Wage and Hour Division. And, though the DOL Opinion takes the reader through the language of the regulations, merely to clarify the methodology available to the employer, there is little risk that the DOL Opinion involves an interpretation that would "fall more naturally into a judge's bailiwick." *See Kisor* at 2417.

Finally, the DOL Opinion is consistent with the regulations and how the Wage and Hour Division and the district courts have historically interpreted those regulations—it is even consistent with the non-official FOH. The DOL Opinion is not a "new interpretation," nor is it "merely [a] convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack," nor is it a substitution of "one view of a rule for another" *Kisor* at 2417.

The only possible conflict with prior interpretations arises from Judge Rose's misreading of the FOH. The FOH provides Wage and Hour Division investigators and staff with guidance on policies already established. The FOH is permissive: ["the [IRS rate] may be used (in lieu of actual costs and associated recordkeeping)"] FOH § 30c15(a). This guidance is not an authoritative policy opinion, but it does reflect the Agency's position that the IRS rate is an optional safe harbor under the regulations. *See* DOL Opinion at 3 ("A regulation that explicitly allows employers to approximate expenses at a rate lower than the [IRS rate] cannot be read to require employers to use the [IRS rate]") (rejecting *Hatmaker*) (citing: *Sullivan*, 362 F. Supp. 3d at 1154-55; *Perrin* 114 F. Supp. 3d at 721-22).

The plain language of the anti-kickback regulation is clear. Nevertheless, should this court find ambiguity in the regulations that comprise the anti-kickback rule, the DOL Opinion deserves deference. *See Bradford*, No. 1:20-CV-00060, 2021 WL 4860600, at *2 [quoting: *Kennedy*, 2020 WL 5076756, at *4-5 (citing: *Kisor*, 139 S. Ct. at 2415)]. The DOL Opinion is the official position of the Agency. It is a reasonable interpretation of the applicable regulations and involves issues within the province of that Agency. And it does not affect prior agency interpretations of the regulations applicable to the FLSA. Should this court find the regulations ambiguous, the DOL Opinion controls under *Kisor*.

## II.   THE EMPLOYEE'S ACTUAL EXPENSE IS THE REIMBURSEMENT TARGET UNDER THE FLSA—NOT THE IRS RATE.

It is axiomatic that when an employer chooses to reasonably approximate employee expense, they will target the actual expense of the employee. The safe harbor IRS rate, on which Plaintiff's allegations depend, is neither a reasonable approximation nor relevant to the calculation of employee expense. The IRS rate is an allowance under the Tax Code, based on national averages and unrealistic assumptions. Both the DOL and the IRS consider the IRS rate a safe harbor, but it is poor proxy for actual vehicle expense. And using the IRS rate as a benchmark in approximating employee expense will result in over reimbursement and a *de facto* increase in wages. The proper benchmark for determining whether GC's reimbursement policy reasonably approximated Plaintiff's expense is Plaintiff's actual expenditure—not the IRS rate.

### A. Neither the FLSA Nor the Applicable Regulations Support the IRS Rate as an Accurate Approximation of Actual Expense.

The FLSA and its applicable regulations concern the Plaintiff's cash wage and actual expenditures relative to that wage. The anti-kickback regulation is an enforcement tool of the DOL designed to protect the federal minimum wage. The anti-kickback regulation requires GC to reimburse its employees for the "actual or reasonably approximate amount" of their expense—and only if that expense would cause the employees' cash wage to fall below the federal minimum. On the contrary, the IRS rate is a tool for the Treasury Department to limit over-exuberant tax deductions and has little bearing on the DOL's enforcement of the federal minimum wage laws under the FLSA.

19

1.   **The Regulations Applicable to the FLSA Allow the Employer to Reasonably Approximate the Employee's Actual Expense and Merely Offer the IRS Rate as a Safe Harbor.**

There is no reasonable interpretation of the regulations providing guidance on reimbursement that would cause the reader to believe that an employer *must* reimburse an employee at the IRS rate. Moreover, an interpretation of the regulations that benchmarks a reasonable approximation of expense to the IRS rate defies both common sense and the text of the regulations.

When interpreting a statute, the court must begin with the text. *See Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc*., 9 F.4th 803, 806 (8th Cir. 2021) [citing: *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1048 (8th Cir. 2017)]. But when interpreting a statute, the court must also consider "the statutory context in which the words in question appear, including both 'the specific context in which th[e] language is used, and the broader context of the statute as a whole.'" *Id*. [quoting: *Robinson v. Shell Oil Co*., 519 U.S. 337 (1997)].

As discussed, *supra*, the anti-kickback regulation directs the reader to § 778.217 for guidance on reimbursements. Every provision of that section refers to the "actual or reasonably approximate amount **of the expense**," except for the one provision establishing the IRS safe harbor rate. *See e.g.*, § 778.217(a) (". . . if the amount of the reimbursement reasonably approximates the expense incurred"); § 778.217(b)(1) ("reimbursement for . . . [t]he actual amount expended by an employee . . ."); § 778.217(b)(2) (Same); § 778.217(b)(3) (Same); § 778.217(b)(5) (Same); § 778.217(c)(1) (". . . only the actual or reasonably approximate amount of the expense is excludable from the regular rate"); *cf.*, § 778.217(c)(2)(i) ("A reimbursement . . . is *per se* reasonable . . . if it is the same or less than the maximum reimbursement payment . . . permitted . . . under . . . the IRS guidance issued under 26 C.F.R. 1.274-5(g) or (j) . . .").

The origin of the reimbursement requirement is the anti-kickback regulation, which deals exclusively with the minimum and over-time wage requirements of the FLSA. That regulation states that an employer violates the FLSA where "**the cost of such tools purchased by the employee** cuts into the minimum or overtime wages required to be paid him under the Act." *See* § 531.35 (emphasis supplied). The "cost of such tools" clearly refers to the actual expense that the employee incurred.

20

A violation of the anti-kickback regulation occurs when the employee's required expenditures, incurred for the benefit of the employer, causes the employee's wage to fall below the federal minimum in any given workweek. *See* § 531.35. To avoid that fate, the regulations require the employer to reimburse the employee for the "actual or reasonably approximate" amount of the employee's expenditure. *See*, *generally*, § 778.217. Where reimbursement at the actual amount is not practicable or otherwise inconvenient, the target of the reasonable approximation remains the employee's actual expenditure.

The IRS rate may, but rarely will, equal the "cost of such tools." And the regulations establish the IRS rate as a mere safe harbor—not a reasonable approximation of the employee's actual expense. The regulations only require reimbursement sufficient to satisfy the minimum wage requirements of the FLSA. This rule is a floor preventing under-reimbursement. But the regulations are careful to avoid condoning over-reimbursement, which is highly likely to occur when an employer's reimbursement target deviates from the employee's actual expense.

The regulations establish a ceiling, too. Section 778.217(c)(1) states: "only the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." § 778.217(c)(1). This provision does not prevent an employer from reimbursing more than the actual amount; it only states that the regulations consider the differential between an excessive reimbursement and the actual expense a wage. Section 778.217(c)(3) further supports this.

Section 778.217(c)(3) states that "[p]aragraph (c)(2) of this section creates no inference that a reimbursement for an employee traveling on his or her employer's business exceeding the amount permitted under . . . IRS guidance issued under 26 CFR 1.274–5(g) or (j) is unreasonable for purposes of this section." § 778.217(c)(3). This, again, will allow the employer to reimburse an employee beyond the safe harbor IRS rate. But, pursuant to paragraph (c)(2) of that section, the excess is treated as wages—unless the reimbursement is for the actual amount of employee expense. *Accord* 26 C.F.R. § 1.274-5(g) ("If the total allowance received exceeds the deductible expenses paid or incurred by the employee, such excess must be reported as income on the employee's return"); Info. Letters, IRS INFO 2009-0116 (June 26, 2009) ("Please note however that the $.14 per mile rate as set by section 170(i) is only a safe harbor rate that a person can claim if they do not want to keep reliable written records).

Section 778.217(c)(2)(i) establishes the IRS rate as a safe harbor. Likely conscious of the effect a ceiling on reimbursements may have on the federal government and other employers reimbursing employees at the IRS rate, the regulations include a provision to allow reimbursement at the IRS rate, notwithstanding the fact that it would likely result in over-reimbursement causing a *de facto* increase in an employee's wage. *See* § 778.217(c)(2)(i) ("A reimbursement amount for an employee traveling on his or her employer's business is *per se* reasonable, **and not disproportionately large, if it: [i]s the same or less than the maximum** reimbursement payment . . . permitted for the same type of expense under . . . [the] IRS guidance issued under 26 CFR 1.274–5(g) or (j)") (emphasis supplied).

Section 778.217(c)(2)(i) allows the employer to reimburse an employee at the IRS rate—which will generally result in a reimbursement greater than the employee's actual expense—without having to include the resulting over-reimbursement in the employee's wages as a disproportionately large reimbursement. Section 778.217(c)(2)(i) establishes the IRS rate as a safe harbor in the context of FLSA reimbursement.

**B. The IRS Rate is Not a Reasonable Approximation and a Poor Proxy for Actual Vehicle Expense.**

The IRS rate is a poor proxy for actual vehicle expense *because* it is a safe harbor; it is the maximum amount of money the federal government is willing to part with every year. The IRS rate is the maximum allowance for taxpayers who deduct business mileage from taxable income, and it is adjusted every year. These adjustments, however, are not based on actual costs, but assumptions. *See* IRS Notice 2021-02. And the assumptions on which the IRS rate is based are far removed from the reality of which most drivers experience. This is deliberate.

The IRS, who sets the IRS rate, is part of the Department of the Treasury, and the IRS rate concerns revenue. In contrast, the Wage and Hour Division is part of the DOL, and their reimbursement guidance concerns the FLSA minimum wage. Two completely different codes, with two completely different policy goals, being pulled in two completely different directions.

Because taxpayers are concerned with avoiding taxes, the IRS had to draw a line for business mileage deductions somewhere—the IRS rate is a maximum. The DOL, on the other hand, is dealing with a different problem. Because employers are generally concerned with profits, Congress had to draw a line for wage standards somewhere—the FLSA wage requirements are a minimum. The IRS rate prevents revenue loss through unscrupulous deductions, whereas the anti-

22

kickback regulation prevents unscrupulous employment practices through enforcing the minimum wage.

1. **Benchmarking Reimbursement to the IRS Rate will Result in a Windfall for the Plaintiff.**

The parties of this litigation made an agreement: Plaintiff agreed to deliver GC's pizzas for tips and GC agreed to pay Plaintiff a cash wage of $7.25/hour. GC reasonably approximated Plaintiff's expense at $2.00/order, rather than reimburse him at the safe harbor IRS rate. Plaintiff alleges that GC's reimbursement was not a reasonable approximation. To support his argument Plaintiff benchmarks reimbursement to the IRS rate. (Doc. #42, ¶ 31). This is wrong. The regulations applicable to the FLSA set the IRS rate as a safe harbor but it is **not** a reasonable approximation of actual expense. Benchmarking to the safe harbor IRS rate will result in a significant over-reimbursement and a *de facto* increase in Plaintiff's wage.

The IRS rate assumes national average prices for all fixed and variable costs associated with the operation of a vehicle, whether on the job or not. *See* Rev. Proc. 2010-51 § 4.02. But Plaintiff's area of operation was the Midwest, and cost drivers for delivery workers (e.g., gasoline) are significantly lower than the national average in that region. *See* Exhibit K.

Moreover, the IRS rate includes an exceedingly high proportion of depreciation. Depreciation constituted "25 cents per mile for 2018, 26 cents per mile for 2019, 27 cents per mile for 2020, and 26 cents per mile for 2021." *See* IRS Notice 2021-02 (citing: § 4.04 of Rev. Proc. 2019-46). That equals 46.296%, 44.828%, 46.957%, and 46.429% of the total IRS rate, respectively. This amount of depreciation is highly unlikely to apply to most vehicle owners.

The high proportion of depreciation is logical when one considers what the IRS rate is and what it assumes. As stated, *supra*, the IRS rate is a limit on deductions—a compromise. And, for the purposes of its depreciation calculus, the IRS rate assumes a weighted-average **new** vehicle, with a 5-year useful life. *See* Exhibit H; *see also* IRS Publication 946.

Discovery has yet to conclude, but it is highly improbable that Plaintiff delivered pizzas in a brand new $56,100 vehicle. *See* IRS Notice 2022-03 § 5 ("For purposes of computing the allowance under a FAVR plan, the standard automobile cost may not exceed $56,100") [for discussion of FAVR, *See infra*, Section II(B)(3)]. According to the IRS assumptions, if Plaintiff's vehicle was over five years old, it was fully depreciated. And the high proportion of depreciation

in the IRS rate he wishes to benchmark is "*per se* reasonable" gravy. *See*, *supra*, 29 C.F.R. § 778.217.

The IRS rate is a compromise between the IRS and the taxpayers and was never meant to approximate the actual expense of the individual driver. It assumes national average costs, regardless of what or where the driver drives. It assumes that all vehicles are new, with a five-year useful life. And it includes a high proportion of depreciation. The sum of these parts is a designed over-estimate of most drivers' expense—especially those in Nebraska. *See Kennedy*, 2020 WL 5076756 ("this particular plaintiff may benefit from application of the IRS standard mileage rate because Colorado is below average in vehicle-related costs . . .").

Because the regulations applicable to the FLSA created a safe harbor in the IRS rate, reimbursement at that rate is *per se* reasonable and will not require the employer to include any resulting over-reimbursement in the employee's wages. *See supra*, Section II(A)(1) (discussion of the § 778.217 safe harbor). But over-reimbursement is an over-payment, nonetheless. And if the court allows Plaintiff to benchmark to the IRS rate, rather than his actual expense, the resulting over-reimbursement will effectively alter the wage agreement between the parties of this litigation and hand the Plaintiff a windfall.

### 2. The IRS Does Not Consider the IRS Rate as A Reasonable Approximation of Employee Expense.

The IRS rate is a compromise between the taxpayer and the government—not a reasonable approximation of vehicle expense. This is ever more apparent in how the IRS limits the use of the IRS rate. *See e.g.,* RP 19-46 § 4.05(1) ("A taxpayer may not use the business standard mileage rate to compute the deductible expenses of five or more automobiles a taxpayer owns"). And how those tasked with determining IRS guidance on business use of an automobile understand it. *See* Exhibit G. The IRS rate was never intended to act as a reasonable approximation of the drivers' actual expense. And because the target of the employers' reasonable approximation under the regulations applicable to the FLSA is the actual expense, it defies common sense to benchmark to the IRS rate.

The IRS rate is primarily a tool for limiting taxpayer deductions and determining depreciation. RP 19-46 § 4.01 ("A taxpayer may use the [IRS] rate . . . to substantiate the amount of a deduction"); RP 19-46 § 4.04 ("a taxpayer must reduce the basis of an automobile used in business by the greater of the amount of depreciation the taxpayer claims for the automobile or the amount of depreciation allowable"). If the taxpayer uses the IRS rate to calculate business expense

reimbursement, that expense will take the place of actual depreciation in the taxpayer's tax claim. *See id.* Likewise, if the taxpayer claims depreciation of their vehicle independent of the IRS rate, that taxpayer may not use the IRS rate for the purposes of claiming depreciation. *Id.*

On January 17, 2020, a former IRS employee of 33 years signed a declaration for use in *Kennedy* that was also cited in the Defendant's Brief in Support of Motion for Summary Judgement in *Bradford*. *See Bradford*, No. 1:20-CV-60, 2021 WL 2142531 (S.D. Ohio May 26, 2021) (Doc. #31), report and recommendation adopted, No. 1:20-CV-00060, 2021 WL 4860600 (S.D. Ohio Oct. 19, 2021). Defendants present that declaration to this Court designated as Exhibit G.

Michael Damasiewicz worked as Director of IRS Examination Policy in the Small Business/Self-employed Division from 2017-2018, and managed the team responsible for, *inter alia*, developing guidance for IRS employees, taxpayers, and practitioners related to the determination of tax—which included the business use of an automobile. (Exhibit G, ¶ 2). Mr. Damasiewicz affirms that the IRS rate is nothing more than a safe harbor developed for tax accounting purposes, and not designed to represent specific driver mileage cost. *Id.*, ¶ 6.

The IRS rate was developed "only to allow taxpayers to compute a deduction for tax purposes and was never intended to be used to establish mileage reimbursement rates." *Id.*, ¶ 7. The IRS rate is a national annualized weighted average and does not account for geographic (e.g., Nebraska costs) or demographic variance (e.g., 2022 Audi S4, MSRP $52,945, or a used 2002 Honda Civic). *See id.*, ¶ 8.

The limitations that the IRS places on the use of the IRS rate support the argument that the IRS rate not intended as a reasonable approximation of actual expense. This is further supported in how high-level employees of the IRS understand that rate. Because the target of GC's reimbursement of Plaintiff's expenses was Plaintiff's actual expenses, Plaintiff cannot reasonably benchmark GC's reimbursements to the IRS rate.

### 3. The Third-Party Vendor that Calculates the IRS Rate is an Affiliate of Defendant's Third-Party Vendor, Motus.

The IRS rate is, itself, an approximation. *See* IRS Notice 2022-03 § 2 ("An independent contractor conducts an annual study for the [IRS] of the fixed and variable costs of operating an automobile to determine the standard mileage rates for business, medical, and moving use reflected in this notice"). For several years, a company called Runzheimer acted as the third-party vendor that performed the annual study in which the IRS rate was based. The Defendants in *Hatmaker*

submitted a Declaration in support of their Motion for Declaratory Summary Judgment, from a former employee of Runzheimer for 25 years. *See Hatmaker v. Papa John's Ohio, LLC* (3:17-cv-00146) (Doc. #120-3). Defendants present that declaration to this Court designated as Exhibit H.

At Runzheimer, from 2015-2018, Heidi Skatrud was the Senior Vice President who oversaw the team and process responsible for the annual study that the IRS hired Runzheimer to perform. *See* Exhibit H, ¶¶ 2-3. Ms. Skatrud's Declaration largely confirms that the IRS rate is not a reasonable approximation of Plaintiff's actual expense. The relevancy of that Declaration, however, is not only her past employment, but her current position as Senior Vice President of Product Management at Motus. *See* https://www.motus.com/leadership-team/ (last visited February 02, 2022).

Motus is a SaaS system that offers, *inter alia*, delivery driver tracking and reimbursement. The system, like many others of its kind, is an answer to the proliferation of "gig" workers and FLSA litigation. The system boasts the sort of well-reasoned and comprehensive model for reimbursement calculations that the FLSA requires and the DOL has stated approval for. *See* DOL Opinion at 4-6.

Defendants enrolled in Motus's vehicle reimbursement plan on or about August 6, 2020. *See* Exhibit D. That plan utilizes the FAVR method for calculating actual vehicle expense. *See* Exhibit E, at 2. The FAVR method is an accepted calculation of actual vehicle expense under the IRS rules. *See generally* IRS RP 19-46 § 6. A FAVR allowance is a mileage allowance using a flat rate or stated schedule that combines periodic fixed and variable rate payments. IRS RP 19-46 § 6.01(1). Crucially, the IRS rate, which is based on the Runzheimer annual study of the fixed and variable costs, "leverages the same body of data that informs Motus' FAVR and Delivery Services calculations." Exhibit E, at footnote 2.

The Motus suggested reimbursement calculation draws from the same data as the IRS rate and uses the FAVR method to reasonably approximate actual employee expense. The Motus calculation necessarily includes relevant fixed and variable costs of the business use of a vehicle. *See* Exhibit E, at 7-9; Exhibit F. Moreover, unlike the IRS, Motus tailors their calculations to the individual location of its clients' individual stores. *See* Exhibits E and F. After applying its FAVR algorithm to the data, Motus will present the client with suggested reimbursements based on assumed vehicles ranging from "Compact Car" to "Full-Size Truck." Exhibit E, at 6.

Assuming a used compact sedan, the November 2021 Motus suggested reimbursement rate for Plaintiff's store, Store 6111, as identified in sealed Exhibit F, was dramatically lower than the IRS safe harbor rate. *See* Doc. #102, Exhibit F. That rate is composed of both fixed and variable costs. *Id.* During the same period, the IRS rate was $0.56/mile. *See* IRS Notice 2022-03. When applying the IRS rate algorithm (safe harbor) and the Motus FAVR algorithm (reasonable approximation) to the same data set, there is a large differential between the two. This gap is logical considering the IRS rate is a tool for limiting tax deductions and the Motus suggested rate is a tool for reasonably approximating actual employee expense. The gap between the two is further evidence that the IRS rate is a safe harbor and not a reasonable approximation of actual expense. And this gap is further evidence that Plaintiff's attempt to benchmark his damages to the IRS rate is unreasonable as a matter of law.

The IRS rate is a safe harbor—not a reasonable approximation of actual expense. The text of the regulations, the disparate policy goals between the IRS rate and the anti-kickback regulation, the understandings of those responsible for calculating the IRS rate, and the real-world application of the IRS rules do not support the IRS rate as a reasonable approximation of employee expense. Accordingly, this Court should not allow Plaintiff to benchmark his argument to the IRS rate.

Allowing Plaintiff to benchmark his argument to the IRS rate will result in a *de facto* increase of Plaintiffs wage, contrary to the agreement he made with GC. The Plaintiff must do what the regulations demand: benchmark his argument to the actual expense incurred and let the finder of fact determine whether GC's reimbursement policy was a reasonable approximation of that expense. Otherwise, this Court runs the risk of facilitating a windfall for Plaintiff. Defendants respectfully request this Court declare that the actual expense of Plaintiff's employment-related vehicle use is the proper measure from which the finder of fact must determine whether GC's reimbursement policy was a reasonable approximation of Plaintiff's employment-related vehicle expense in compliance with the FLSA.

### III. PLAINTIFF HAS THE BURDEN TO PROVE THAT GC DID NOT REASONABLY APPROXIMATE HIS ACTUAL EXPENSE AND THAT ANY UNDER-REIMBURSEMENT RESULTED IN HIS WAGES FALLING BELOW THE FEDERAL MINIMUM.

Any employer who violates the provisions of § 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, . . . and in an additional equal amount as liquidated damages. 29 U.S.C.A. § 216. Nevertheless, it is Plaintiff's burden to prove,

by a preponderance of the evidence, that GC's reimbursement policy did not reasonably approximate his actual employment-related vehicle expenses, **and** that any resulting under reimbursement caused his wages to drop below the federal minimum. *See Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785, 793 (S.D. Ohio 2021); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 5725043, at *4 (S.D. Ohio Nov. 5, 2019); *accord e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (superseded by statute); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

Defendants respectfully request this Court declare that to prove his FLSA claim against Defendants Plaintiff must prove, by a preponderance of the evidence (1) that GC's reimbursement policy did not reasonably approximate his actual employment-related vehicle expenses; and (2) any resulting under reimbursement caused his wages to drop below the federal minimum.

## IV.   PREVAILING DEFENDANTS IN FLSA ACTIONS ARE ENTITLED TO RECOVER COSTS.

On November 30, 2021, Defendants filed their Objections to this court's November 16, 2021 Findings and Recommendations (Doc. #68) on the basis that, *inter alia*, Plaintiff's proposed Notice to the putative class, which this court approved, did not include language warning potential opt-in plaintiffs of the possibility of fee shifting. (Doc. #69, pp. 12-14). In response, Plaintiff misstated the law as it applies in the 8th Circuit, claiming, "the FLSA does not allow fee-shifting in favor of prevailing Defendants." (Doc. #72, pp. 18).

Courts in the 8th Circuit will allow a prevailing defendant in an FLSA action to recover costs incurred. *See e.g.*, *Lochridge v. Lindsey Mgmt. Co.*, 824 F.3d 780, (8th Cir. 2016); *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881 (8th Cir. 2016); *See also Lupardus v. Elk Energy Servs., LLC*, No. 2:19-CV-00529, 2020 WL 4324221, at *7 (S.D.W. Va. July 28, 2020). "Even if a federal statute does not specifically authorize recovery of costs in a particular matter, 'Rule 54(d)(1) independently authorizes district courts to award costs to prevailing parties,' *unless a statute or rule precludes it*." *St. Louis Effort for AIDS v. Huff*, No. 13-4246-CV-C-ODS, 2016 WL 10957244, at *4 (W.D. Mo. Aug. 19, 2016) (quoting: *Lochridge v. Lindsey Mgmt. Co.*, 824 F.3d 780) (emphasis supplied).

Section 216(b) is silent regarding the court's authority when the defendant is the prevailing party. "Because § 216(b) addresses only an award of costs to a prevailing plaintiff and neither § 216(b) nor any other provision of the FLSA precludes an award of costs to a prevailing defendant,

28

a prevailing defendant is not precluded from collecting its costs incurred." *Lindsey Mgmt. Co.*, at 782–83.

In *Lindsey Mgmt. Co.*, the Appellee brought an action under the FLSA in the District court for the Western District of Arkansas. *Lindsey Mgmt. Co.*, at 781. The jury found in favor of Appellant, who sought costs incurred and filed its Bill of Costs under Rule 54(d). *Id.* The district court held, "Given the remedial nature of the statute and its failure to indicate that defendants should recover costs, it concludes that defendant's Bill of Costs should be denied." *Id.* Appellants Appealed the ruling and the 8th Circuit vacated the District Court's decision and remanded for further consideration. *Id.*

The 8th Circuit explains, "the fact that a prevailing party prosecutes its rights under the Federal Rules of Civil Procedure to an award of costs cannot be seen as chilling the flow of litigation . . . [i]ndeed, the very possibility that a losing party will be required to reimburse the prevailing party for its costs should cause parties to litigation to pause and calculate the risks of pursuing meritless or marginal claims." *Id.* at 782-783 [quoting: *Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 289 (3d Cir. 2010)].

The Federal Rules of Civil Procedure presume that the prevailing party is entitled to costs. *See Id.* at 783 (internal quotations omitted). It is incumbent on an attorney to explain the risks of litigation to his or her client—including the risk that under Rule 54(d)(1) they may have to pay costs should their litigation ultimately prove unsuccessful. *Id.* (internal quotations omitted).

Rule 54(d)(1) provides that costs *should* be awarded to the prevailing party. "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court. *Id.* [quoting: *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 565, 132 S.Ct. 1997, 2001 (2012)] ("Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties").

The decision of whether to award costs to any prevailing party is firmly within the discretion of this court. But Defendants, should they prevail in this FLSA action, are entitled to a decision of whether their costs are recoverable under Rule 54(d)(1). To facilitate an expedient and just conclusion to this litigation, Defendants respectfully request that this court exercise its discretion in Defendant's favor and declare their costs are recoverable should they prevail in this litigation.

## **CONCLUSION**

The regulations applicable to the FLSA allow an employer to reasonably approximate employee expense for the purposes of reimbursement and the anti-kickback rule. Moreover, when an employer chooses to reasonably approximate employee expense, the target of their approximation is the employee's actual expense. Plaintiff bears the burden of proving that GC's reasonable approximation resulted in an under-reimbursement that caused his wages to fall below the federal minimum. If Plaintiff cannot meet that burden, Defendants are entitled to costs. Defendants respectfully move this court to enter a declaratory summary judgment as follows:

(1) Adopting the Reasonable Approximation Standard for purposes of compliance with the FLSA minimum wage requirement through the anti-kickback regulation. 29 C.F.R. § 531.35;

(2) Declaring that an individual employee's actual employment related vehicle expense— not the optional IRS rate— is the measure for FLSA minimum wage compliance through the anti-kickback regulation. 29 C.F.R. § 531.35;

(3) Declaring the standard of proof in this case is preponderance of the evidence and that in order to prove a FLSA violation Plaintiff, and any other similarly situated employee, must prove GC failed to reimburse actual expense or GC's reimbursement policy failed to reasonably approximate his actual expense, **and** that a resulting under-reimbursement caused the cash wage to fall below the federal minimum; and

(4) Declaring that if Plaintiff, and any other similarly situated employee, fails to satisfy his burden of proof, and Defendants prevail in this litigation, Defendants are entitled to their costs.

GC PIZZA LLC d/b/a "Domino's Pizza" and GREGORY CUTCHALL, individually, Defendants

By: s/Michael L. Moran
Michael L. Moran, #24042
ENGLES, KETCHAM, OLSON & KEITH, P.C.
1700 Farnam Street
1350 Woodmen Tower
Omaha, Nebraska 68102
(402) 348-0900  Fax (402) 348-0904
mmoran@ekoklaw.com

30

## **CERTIFICATE OF COMPLIANCE**

Pursuant to NeCivR 7.1(d)(3), I hereby certify this brief complies with the requirements of NeCivR 7.1(d)(1). Relying on the word-count function of Microsoft Office Word 2016, this document contains 12,223 words. The word-count function was applied to all text, including captions, headings, footnotes, and quotations.

s/Michael L. Moran

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Meredith Black Mathews
Forester Haynie, PLLC
400 North St. Paul Street Suite 700
Dallas, TX 70201
Work: (214) 210-2100
Fax: (214) 346-5909
mmathews@foresterhaynie.com

Mark Potashnick
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Work: (314) 997-9150 ext. 2
Fax: (314) 997-9170
markp@wp-attorneys.com

Eli Karsh
LIBERMAN, GOLDSTEIN & KARSH
225 S. Meramec Ave., Suite 1200
St. Louis, Missouri 63105
Work: (314) 433-9300
Fax: (314) 300-6262
elikarsh@aol.com

Edward Weinhaus
10859 Picadily Square Drive
Saint Louis, Missouri 63146
Phone: (314) 580-9580
eaweinhaus@gmail.com

**Attorneys for Plaintiff**

s/Michael L. Moran