## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VINCENT RODRIGUEZ, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> GC PIZZA LLC d/b/a "Domino's Pizza", <br><br> Defendant. | 4:20-CV-3106 <br><br><br> MEMORANDUM AND ORDER |

In this class and collective action, the plaintiff, Vincent Rodriguez, represents himself and other similarly situated delivery drivers employed by defendant GC Pizza, LLC between December 2018 and December 2021. The defendant is the owner of several Domino's Pizza restaurants in Nebraska. The plaintiff's operative complaint, filing 42, alleges that the defendant failed to properly reimburse drivers for costs expended for the benefit of the employer, causing drivers' wages to drop below the minimum wage in violation of 29 U.S.C. § 206 and Neb. Rev. Stat. § 48-1203.

This matter is before the Court on the defendant's motion for partial declaratory summary judgment (filing 106), the plaintiff's cross-motion for partial summary judgment (filing 116), the plaintiff's motion to strike (filing 114), and the defendant's motion to strike (filing 125). The stated purpose of the defendant's motion for partial declaratory summary judgment is to determine the scope of discovery so that the case can proceed efficiently. Filing

108 at 3. Discovery has been stayed pending the resolution of the motions in this order. Filing 132.

## I. BACKGROUND

The defendant owns and operates Domino's franchise restaurants in Nebraska, and it hires drivers to use their personal vehicles to deliver pizzas and other products. Filing 42 at 1; filing 43 at 1. The plaintiff represents a conditionally certified class under 29 U.S.C. § 216(b), containing delivery drivers employed by the defendant between December 14, 2018, and December 14, 2021. Filing 73. The plaintiff also represents the same class in a Fed. R. Civ. P. 23 class action for the NWHA claims. Filing 42.

The defendant paid drivers $7.25 per hour and claimed a tip credit of $1.75 to meet the $9.00 per hour minimum wage pursuant to Neb. Rev. Stat. § 48-1203(2). Filing 108 at 4. If drivers engaged in non-tipped work, drivers were paid $9.00 per hour without any tip credit. *See* filing 108 at 4. The defendant requires drivers to use and maintain safe, legally operable, and insured vehicles. Filing 42 at 4; filing 43 at 2. The defendant does not maintain its own vehicles and drivers are reimbursed at a rate of $2.00 per delivery to "compensate drivers for the business use of their personal vehicles." Filing 108 at 4.

The plaintiff asserts the defendant violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Nebraska Wage and Hour Act (NWHA), Neb. Rev. Stat. § 48-1201 *et seq.*, in two ways: (1) the $2.00-per-delivery reimbursement rate unreasonably under-approximated the costs of using a personal vehicle for the benefit of the defendant, and (2) the defendant required employees to pay for their own uniforms. Filing 42 at 13-20. Both policies, according to the plaintiff, resulted in a kickback to the defendant that

unlawfully dropped delivery driver wages below the minimum wage. Filing 46 at 13-19.

The plaintiff alleges the defendant's vehicle cost reimbursement policy resulted in an effective wage of $6.46 per hour, below both the federal and Nebraska minimum wages. Filing 42 at 6; filing 108 at 5. To arrive at this figure, the plaintiff estimates that each delivery averaged at least 6 miles, thus drivers were reimbursed at approximately $0.333 per mile ($2.00 per delivery divided by 6 miles). Filing 42 at 6. But the plaintiff alleges the Internal Revenue Service standard business mileage rate ("IRS rate") is a reasonable approximation for the value an employee's personal vehicle provides to an employer. Filing 42 at 6. The IRS rate was $0.535 and $0.58 per mile between 2018 and 2021. Filing 42 at 6. Plaintiff compared the IRS rate to the rate paid by the defendant and alleged the defendant under-reimbursed its delivery drivers by at least $0.21 per mile, or by $1.27 per delivery. Filing 42 at 6; filing 108 at 5. Using the approximation of two deliveries per hour, the plaintiff calculated this disparity caused delivery drivers' wages to drop below the minimum wage ($9.00 per hour) by $2.54 per hour, for an effective wage of $6.46 per hour. Filing 42 at 6; filing 108 at 5.

The issues now before the Court are the defendant's motion for partial declaratory summary judgment on limited issues of law (Filing 108) and the plaintiff's cross-motion for summary judgment on a similar issue (Filing 113). The parties primarily ask the Court to pick a side on a district court split regarding how to interpret 29 C.F.R. §§ 531.35 and 778.217, which generally require an employer's reimbursement of employee expenses incurred on the employer's behalf to "reasonably approximate" the expense incurred. The defendant asks the Court to declare an employer may comply with the anti-kickback regulation by using any reasonable approximation of employee

expenses (Filing 108 at 2), while the plaintiff would have this Court declare that employers must either (a) track and reimburse actual vehicle costs or (b) reimburse expenses at the IRS rate (Filing 113 at 40).

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* Rule 56 also allows the Court to grant summary judgment as to some issues but not as to others. *See* Fed. R. Civ. P. 56(a).

## III. DISCUSSION

The defendant has asked the Court to take the following actions:

- Declare that the Reasonable Approximation Standard applies to determine whether the defendant complied with the anti-kickback regulation and the minimum wage requirement, 29 C.F.R. § 531.35;

- Declare that compliance with anti-kickback regulation is measured by an individual employee's actual employment-related vehicle expense, not by the IRS rate;

- Declare that in order to prevail in this case, any plaintiff must prove, by a preponderance of evidence standard: (a) the defendant failed to

reimburse actual expenses, or its policy failed to reasonably approximate expenses, and (b) the resulting under-reimbursement caused the employee's cash wage to fall below the federal minimum wage;

- Declare that the defendant will be entitled to costs if the plaintiff fails to meet the burden of proof; and

- Declare that under both the FLSA and the NWHA, employers may apply a tip credit to any alleged under-reimbursement.

Filing 108, Filing 127. The plaintiff, on the other hand, has asked the Court to adopt the IRS rate as the proper method to reasonably approximate employee expenses when an employee uses a personal vehicle for an employer's benefit. Filing 116. The plaintiff also moved to strike certain evidence contained in the defendant's motion for partial declaratory summary judgment. Filing 114. Finally, the defendant moved to strike certain arguments in the plaintiff's brief. Filing 119.

The Court finds the "Reasonable Approximation" standard applies; the IRS rate is probative of whether the defendant reasonably approximated employees' vehicle expenses; the plaintiffs are allowed to provide their own approximations of expenses and do not need to prove actual unreimbursed expenses; the defendant may be entitled to costs, but the Court will make no declaration at this time; and the defendant may not apply a tip credit to any alleged under-reimbursement under either the FLSA or the NWHA. The motions to strike will be taken up as they are relevant to the discussion, and both will be denied.

1. "Reasonable Approximation" or "IRS Rate"

Both parties seek the Court's resolution on the legal standard that will determine whether the defendant appropriately reimbursed its delivery drivers for expenses incurred while using their personal vehicles for the benefit of their employer. Filing 108 at 30; Filing 113 at 40. Such a resolution depends on if the regulations are ambiguous, and if any agency interpretation helps to resolve ambiguity. *See Voigt v. Coyote Creek Mining Company, LLC*, 999 F.3d 555, 561 (8th Cir. 2021). A court can defer to an agency's interpretation of a regulation if the regulation is genuinely ambiguous, and if the interpretation is a reasonable, fair, and official interpretation based on the agency's substantive expertise. *Id.; see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *Auer v. Robbins*, 519 U.S. 452, 455 (1997). *Auer* deference is not appropriate for issues which are in a judge's "bailiwick." *Kisor*, 139 S. Ct. at 2417.

The defendant wants this Court to declare, as a matter of law, that the regulations (specifically 29 C.F.R. §§ 531.35 and 778.217) unambiguously allow employers to reimburse delivery drivers either for actual expenses or for any reasonable approximation of expenses. Filing 108 at 30. Alternatively, the defendant argues that if the regulations are genuinely ambiguous, the Court should defer to an opinion letter from the Department of Labor to resolve any ambiguity. Filing 108 at 30. The plaintiff asks this Court to find the regulations are genuinely ambiguous, but instead wants the Court to defer to an agency interpretation in the Department of Labor Field Operations Handbook ("the Handbook"), Chapter 30c15, which the plaintiff says requires employers to use the IRS rate to approximate expenses if employers do not track actual employee expenses. Filing 113 at 14-16.

This Court finds, while the regulations may be ambiguous, neither interpretation offered by the parties fulfills the stringent guidelines for *Auer*

deference under *Kisor* and *Voigt*. The resolution of the meaning of "reasonably approximate" in the regulations is a question in a judge's "bailiwick," and the agency interpretations do not provide any additional clarity the Court cannot glean from the regulations' plain text. *See Kisor*, 139 S. Ct. at 2417.

(a) Department of Labor Regulations

The plaintiff's claim for relief lies in the "free and clear" or anti-kickback regulation, 29 C.F.R. § 531.35. This regulation provides that expenses paid by an employee for an employer's benefit cannot be included in calculating an employee's wage. For example, if an employee must provide "tools of the trade," *i.e.*, if employees must provide their own vehicles and gas to make food deliveries for their employer, "there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum . . . wages required to be paid him under the Act." § 531.35. The plaintiff argues the defendant's policy under-reimbursed its delivery drivers, causing the cost of the tools to cut into drivers' wages, resulting in a wage below the federal minimum wage in violation of 29 U.S.C. § 206. Filing 42 at 13.

The anti-kickback regulation provides additional guidance by incorporating § 531.32(c), giving more detail about the types of costs employees might expend to be reimbursed by the employer. This regulation, in turn, incorporates § 778.217, and its language is at the heart of the parties' present dispute.

Section 778.217 provides more specific guidelines for reimbursing employee expenses undertaken for the benefit of the employer. Read in the context explained above, § 778.217(a) obliges an employer to reimburse an employee for providing "tools of the trade" in an amount that "reasonably approximates the expense incurred." The regulation also expressly contemplates vehicle expenses, providing that employers may reimburse

7

employees "[t]he actual or reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business." § 778.217(b)(3). And the regulation specifies that a reimbursement amount for employee vehicle expenses is "per se reasonable" and not an over-reimbursement if it complies with 26 C.F.R. § 1.274-5(g), which sets the IRS rate for mileage reimbursement. § 778.217(c)(2); *see* Notice 2022-03, IRS 2022 Standard Mileage Rates, available at https://www.irs.gov/pub/irs-drop/n-22-03.pdf.

### (b) *Auer* Deference

The parties dispute whether the Court should defer to agency interpretations of § 778.217 per *Auer v. Robbins*, 519 U.S. 452 (1997). *Auer* deference applies to an agency's interpretation of its own regulation. If a regulation is "genuinely ambiguous," then an agency interpretation of this regulation may be entitled to *Auer* deference. *Voigt,* 999 F.3d at 561; *Kisor,* 139 S. Ct. at 2415. If a regulation is not ambiguous, then no agency interpretation will be considered. If an agency interpretation does not meet the standard laid out in *Kisor* and *Voigt*, then the Court will not defer to the interpretation.

In *Auer*, the Supreme Court affirmed the doctrine that a federal agency's interpretation of its own regulation is entitled to deference by a court. The question centered on whether St. Louis police officers were exempt from overtime pay requirements under the FLSA. *Auer,* 519 U.S. at 455. The answer to that question depended on the Court's resolution of whether police officers were "subject to" pay deductions. *Id.; see also Kisor,* 139 S. Ct at 2410. In settling that question, the Court decided Congress intended the Department of Labor to maintain the broad authority to define the scope of the FLSA and its exemptions, and the Court deferred to the agency interpretation of its own rules for overtime exemptions.

8

Such deference was upheld, though modified, in *Kisor,* 139 S. Ct at 2410. *Kisor* provides that agency interpretations are only entitled to deference when the regulation at issue is "genuinely ambiguous." Further, only certain types of agency interpretations qualify for this deference.

The Eighth Circuit has applied this modified *Auer* deference and set out a five-part analysis for this Court to follow. For an agency interpretation to receive *Auer* deference: (1) the regulation must be genuinely ambiguous; (2) the interpretation must be reasonable; (3) the interpretation must be the agency's "authoritative" or "official position;" (4) the interpretation must implicate the agency's substantive expertise; and (5) the interpretation must reflect "fair and considered judgment," meaning parties generally must have fair warning of the agency interpretation prior to commencing a lawsuit. *Voigt,* 999 F.3d at 561. If an agency interpretation merely restates or paraphrases the regulation, it does not receive deference; rather, a court may consider any persuasive value the document has. *Fast v. Applebee's Intern.,* 638 F.3d 872, 877 (8th Cir. 2011).

The parties disagree as to which agency interpretation should guide the Court's analysis of §§ 531.35 and 778.217 if the regulations are ambiguous. The plaintiff argues that the Handbook is the agency interpretation owed *Auer* deference. The defendant argues an August 31, 2020, Opinion Letter is the controlling agency interpretation.

### (i) Field Operations Handbook, Chapter 30c15

The plaintiff contends the Department of Labor interpreted "reasonably approximate" in the Field Operations Handbook ("Handbook") Chapter 30c15, published on November 17, 2016. However, the interpretation is unreasonable if read how the plaintiff wishes it read, and the interpretation fails to implicate

9

the agency's substantive expertise because it merely restates the regulation. Therefore, the Handbook is not entitled to *Auer* deference.

The Handbook section applies to car expenses and an employee's use of a personal car on the employer's business. The relevant section reads:

> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes.

U.S. Dep't of Labor, Field Operations Handbook § 30c15 (2016). The plaintiff construes this provision as providing employers two options to comply with the minimum wage requirement: either track actual costs or reimburse at the IRS rate. According to the plaintiff, the language in parentheses provides employers with the only other option beyond the IRS rate. The defendant argues the Handbook does not prohibit other reasonable approximations of employee expenses otherwise consistent with federal law.

This Court agrees with the defendant's reading of the Handbook. The Handbook neither expressly nor implicitly mandates the IRS rate as the only method employers can use to calculate employee expenses. Reading the Handbook as requiring the IRS rate would be unreasonable and inconsistent with the regulations. There may be a case where the IRS rate constitutes an

under-reimbursement if the cost of operating a vehicle is higher than the average calculated by the IRS,[1] and it would be unreasonable for the Department of Labor to mandate an under-reimbursement by relying on the IRS rate in that case. It is not reasonable to interpret the Handbook as giving employers only two options when the regulations provide the IRS rate only as a *per se* reasonable approximation – such language does not imply, and cannot be interpreted as saying, that any other reimbursement calculation is statutorily *un*reasonable.

Overall, the Handbook does not offer the clarity the plaintiff claims it provides. To the extent the plaintiff desires the IRS rate to apply exclusively, such a reading would be an unreasonable interpretation of the regulations and of the Handbook.

### (ii) Opinion Letter dated August 31, 2020

The defendant argues that a Department of Labor Opinion Letter from August 2020 is entitled to *Auer* deference. This letter, however, does little more than restate the regulations, so it fails to implicate the agency's substantive expertise and is only "'entitled to respect' to the extent it has the 'power to persuade.'" *Fast*, 638 F.3d at 878 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006)).

The Department of Labor published this Opinion Letter to specifically address delivery driver reimbursement requirements and interpreting 29 C.F.R. § 531.35. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2020-12, 2-3 (Aug. 31, 2020). The letter addresses, among other things, two questions directly related to the present parties' dispute: whether the

---

[1] If, for instance, the price of gasoline unexpectedly increased faster than the IRS rate was adjusted to compensate.

regulations require employers to track actual expenses or if employers can reasonably approximate expenses, and whether the IRS rate is the only method employers can use to approximate employee expenses.[2]

The relevant portion of the letter states several times that it is interpreting the "plain text" of the regulations: "The plain language of WHD's regulations permits employers to reimburse a reasonable approximation…"; "This plain reading is supported by…"; "The plain language of the regulations also allows employers to reasonably approximate…." Multiple references to the plain text of the statute indicates the agency, at the very least, does not consider the regulations to be ambiguous. The letter declines to approve or disapprove of other methods of approximating expenses beyond the IRS rate, stating that other methods which reasonably approximate employee expenses comply with the regulations and methods which do not reasonably approximate do not comply. Because nothing in the letter goes beyond interpreting the plain text of the regulations, nothing in the letter implicates the agency's substantive knowledge or experience. *See Voigt,* 999 F.3d at 561.

(c) The "Reasonable Approximation" Standard Applies

Neither the Opinion Letter nor the Handbook should receive *Auer* deference under *Voigt* and *Kisor*. The issue here, unlike the complicated and technical regulations in *Voigt* and *Kisor*, is an issue where the interpretation of the regulations is more in a judge's "bailiwick." *Kisor,* 139 S. Ct. at 2417. "Reasonable" is often interpreted by courts and judges, and nothing in the "guidance" documents provided by the parties illuminates the agency's technical knowledge. Rather, the issue of what standard applies to the present

_____

[2] The letter also addresses a question regarding whether employers must reimburse fixed costs, an issue hinted at in the parties' briefing in the current case.

dispute is something the Court does regularly: statutory interpretation. Therefore, the Court must interpret the regulations using regular tools of statutory construction by analyzing the text, structure, history, and purpose of the regulations. *Fast*, 638 F.3d at 877; *Kisor*, 139 S. Ct. at 2415 (citing *Pauley v. BethEnergy Mines*, 501 U.S. 680, 707 (1991)). This Court finds that employers may reasonably approximate an employee's cost of using personal vehicles for the benefit of the employer. The IRS rate is per se reasonable and will be probative of reasonableness. A reimbursement higher or lower than the IRS rate is not per se unreasonable, but the IRS rate is a reasonable benchmark that employees and employers can use to estimate expenses.

This reading of the regulations is consistent with the plain text of the regulations and the purposes of the FLSA. The FLSA has remedial and humanitarian purposes and is designed to protect employees from exploitation and unfair labor conditions. *Perez v. Contingent Care, LLC,* 820 F.3d 288, 292 (8th Cir. 2016) (citing *Brennan v. Plaza Shoe Store, Inc.,* 522 F.2d 843, 846 (8th Cir. 1975)); 29 U.S.C. § 202. However, the FLSA must also apply broadly in order to fulfill these purposes. *See* 29 U.S.C. § 202(a). By allowing employers flexibility to meet the unique needs of their employees and businesses, the FLSA can remain in effect in nearly every industry in the United States. This interpretation is also consistent with both the Handbook and the Opinion Letter.

(d) The IRS Rate is a Per Se Reasonable Approximation and is Probative of Whether the Defendant's Reimbursement Rate was Reasonable

The defendant, despite clear statutory language to the contrary, attempts to characterize the IRS rate as a legally unreasonable approximation. The defendant states the plaintiff should not be able to benchmark their claim to the IRS rate, claiming the rate is unreasonable as a matter of law because

it would create an over-reimbursement for the collective plaintiffs. Filing 108 at 23-24.

The Court rejects this argument. The regulations unequivocally and unambiguously declare the IRS rate is *per se* reasonable and not an over-reimbursement as an approximation for employee vehicle expenses which benefit the employer. 29 C.F.R. § 778.217(c)(2). If the defendant wishes to argue the IRS rate is not reasonable in these specific factual circumstances, it should do so at the close of discovery or at trial, not to this Court in a motion purported to be limited to issues of law. A statutorily approved reasonable approximation is probative of whether an employer's approximation was reasonable. *Kennedy v. Mountainside Pizza*, No. 19-cv-01199, 2020 WL 5076756, at *5-6 (D. Colo. Aug. 26, 2020). The regulations provide the IRS rate as a statutory benchmark; therefore, the plaintiff can use the IRS rate as a benchmark and a tool of comparison.

### (i) Defendant's Motion to Strike

In arguing that the IRS rate is an unreasonable approximation, the defendant wades deep into the merits of the case, despite its attempts to characterize its arguments as pure law. The plaintiff argues the IRS rate is reasonable, but the defendant claims the plaintiff's arguments are prohibited by Fed. R. Civ. P. 23(c), the so-called one-way intervention protection rule. The defendant filed a motion to strike portions of the plaintiff's brief which argue the IRS rate is reasonable. Filing 125; filing 126 at 4-5.

The one-way intervention protection rule, put simply, prevents a plaintiff in a class action from seeking a ruling on the merits of the case prior to the class being certified. Fed. R. Civ. P. 23(c). The plaintiff's action is both

14

an FLSA collective action under § 216(b) and a Rule 23 class action, and the one-way intervention rule applies to both claims.[3]

Rule 23(c) is meant to protect defendants from class members waiting to join a class until the outcome is favorable. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974); *see* Advisory Committee's Notes to Proposed Amendments to Rule 23, 39 F.R.D. 69, 105 (1966). But the Eighth Circuit has, in its discretion, permitted summary judgment rulings before class certification on various occasions. *See, e.g., Toben v. Bridgestone Retail Operations, LLC,* 751 F.3d 888, 896 (8th Cir. 2014) (citing *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 674 (8th Cir.1999), *Hechenberger v. Western Elec. Co.,* 742 F.2d 453, 455 (8th Cir.1984)). And several other circuits have persuasively concluded that a defendant waives its one-way intervention protection when it moves for summary judgment prior to class certification. *See Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995); *Postow v. OBA Federal Sav. and Loan Ass'n*, 627 F.2d 1370, 1382 (D.C. Cir. 1980); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 762 (3d. Cir. 1974).

A defendant waives its protection only when the motion is for a ruling on or relevant to the merits of a case. *Katz,* 496 F.2d at 762; *Diva Limousine, Ltd.*

---

[3] The policy rationale behind § 216(b) supports the application of the Rule 23(c) one-way intervention protection rule. Section 216(b) "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) (citing Fed. R. Civ. P. 83). Section 216(b) was modified by the Portal-to-Portal Act in 1947 to require employees to consent in writing in order to join a § 216(b) collective action. This amendment to the FLSA was passed, in part, to prevent one-way intervention. *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 255-56 (3d Cir. 2012) (citing the Portal-to-Portal Act of 1947, Ch. 52, 61 Stat. 84 § 5).

*v. Uber Techs., Inc.,* 392 F. Supp. 3d 1074, 1095 (N.D. Cal. 2019). The protection of the one-way intervention rule, and thus the waiver of that protection, rests on whether the defendant's motion could impact the membership of the class. *See Paxton v. Union Nat'l Bank,* 688 F.2d 552, 558 (8th Cir. 1982) (one-way intervention prevention is not applicable to suits where members cannot "opt-out"). Rulings related to the merits, such as a determination of the applicable standard for vehicle-related expenses, "affect potential class members' decisions whether or not to opt in." *Diva Limousine,* 392 F. Supp. 3d at 1095.

The purpose of Rule 23 supports the conclusion that defendants waive the one-way intervention protection by filing motions relevant to the merits of the case, including motions for partial summary judgment. The one-way intervention rule is meant to reduce any unfair advantage potential class members may have in choosing whether to bind themselves to favorable or unfavorable rulings. *See Am. Pipe,* 414 U.S. at 547; Advisory Committee's Notes to Proposed Amendments to Rule 23, 39 F.R.D. 69, 105 (1966).

Arguing that the IRS rate is an unreasonable approximation of employee expenses as a matter of law is directly related to the merits of the plaintiff's case. The defendant seeks a favorable judgment to prevent the plaintiff from experiencing a "windfall." Filing 108 at 23. The defendant claims the plaintiff presented evidence "to attack the reasonableness of a purported reasonable approximation of actual employee expenses," Filing 126 at 5, which is exactly what the defendant did when trying to paint the IRS rate as unreasonable. The defendant cannot pick and choose when it is protected from one-way intervention. By making arguments about the reasonableness of the IRS rate in Nebraska, the defendant argued the merits of the case and waived its Rule 23(c) protection.

For these reasons, the defendant waived its one-way intervention protection and its motion to strike will be denied.

### (ii) Plaintiff's Motion to Strike

There is one final issue to take up related to the defendant's argument that the IRS rate is unreasonable. The defendant provided a few affidavits and other evidence, filing 107, which the plaintiff has moved to strike. Filing 114 at 10. The plaintiff argues the defendant did not comply with expert disclosure deadlines and failed to produce this evidence in response to the plaintiff's interrogatories. Filing 114 at 10. The Court did not rely on the evidence provided in assessing the defendant's requests for relief. Therefore, the plaintiff's motion to strike will be denied as moot. *See Perrin*, 114 F.Supp.3d at 730.

### 2. PLAINTIFF'S BURDEN OF PROOF

The defendant next asks the Court to declare that the plaintiff and other class members must prove their actual unreimbursed vehicle costs caused their wages to fall below minimum wage. Filing 108 at 3. According to the defendant, the collective plaintiffs cannot rely on the disparity between the IRS rate and the rate paid by the defendant to show an unreasonable reimbursement rate. Instead, according to the defendant, the plaintiffs must prove, by a preponderance of the evidence: (1) the defendant's reimbursement rate underestimated actual expenses of class members, and (2) class members' actual unreimbursed expenses caused their wages to fall below the minimum wage. Filing 108 at 3, 27-28.

The defendant mischaracterizes the burden in this case. Class members do not have to prove their actual expenses. Employees in an FLSA dispute have the burden to prove that they "performed work for which [they were] not

17

properly compensated." *Fast*, 638 F.3d at 881 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946)) (edits in original). However, an employer has the duty to maintain employment and payment records under 29 U.S.C. § 211(c). These two concepts create a burden-shifting framework. If an employee provides sufficient evidence of work to support a "just and reasonable inference" that such work was un- or under-compensated, the burden shifts to the employer to negate the inference. *Id.* at 882. Courts shift the burden because penalizing an employee for the employer's failure to maintain records would encourage improper recordkeeping, contrary to the remedial and humanitarian purposes of the FLSA. *Id.; see also Perez,* 820 F.3d at 292 (quoting *Brennan,* 522 F.2d at 846).

The Eighth Circuit has applied the FLSA burden-shifting framework in cases about overtime wages and the types of jobs to which the tip credit applies. *Fast*, 638 F.3d at 882. The framework also applies here. Class members have the burden to show the amount and extent of costs expended by using their personal vehicles for the benefit of the defendant, and they can meet this burden by showing enough evidence to support a reasonable inference that the defendant's rate under-reimbursed their expenses. The defendant had the burden to maintain records of expenses incurred and how they were reimbursed. 29 U.S.C. § 211(c). The defendant had no obligation under either 29 C.F.R. §§ 531.35 or 778.217 to track actual expenses, but neither did its employees. Thus, the defendant's use of approximations of employee vehicle expenses means that plaintiffs can provide evidence that the defendant's approximation was unreasonable and, therefore, the drivers "performed work for which [they were] not properly compensated." *Fast,* 638 F.3d at 881. The collective plaintiffs can provide approximations of their expenses as a method of comparison, including the IRS rate or other calculations, which would lead

18

to a reasonable inference that the drivers were undercompensated for labor. The burden will shift to the defendant to rebut the inference proffered by the plaintiffs. Whether the defendant's reimbursement rate was reasonable is, again, a fact question to be determined at the close of discovery or at trial.

### 3. TAXABLE COSTS

The defendant also asks the Court to declare a well-established law – that prevailing parties are entitled to costs. Filing 108 at 28-29; Fed. R. Civ. P. 54(d)(1). The plaintiff asserts such a declaration would be premature because awarding costs to a prevailing party is solely in the discretion of the district court. Filing 113 at 39. The Court agrees with the plaintiff that it is currently unnecessary to make such a declaration.

Indisputably, under Eighth Circuit law and Rule 54(d)(1), the prevailing party is presumed to be entitled to costs, but "the decision whether to award costs ultimately lies within the sound discretion of the district court." *Lochridge v. Lindsey Management Co., Inc.*, 824 F.3d 780, 784 (8th Cir. 2016) (quoting *Marx v. General Revenue Corp.*, 568 U.S. 371, 377 (2013)). At this point, the Court is unwilling to commit to awarding costs to the defendant should it prevail in this lawsuit. Several factors may weigh in favor of the decision to award (or not award), such as any bad faith among the parties, the parties' overall financial resources, or any other reason the Court deems relevant at the closing of this case. *See Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006). A lot can change between this Order and the end of this case. The Court cannot now provide a rationale for approving or disapproving costs, and so it will refrain from making any sort of declaration at this point.

### 4. TIP CREDIT

The defendant, in addition to the relief requested in Filing 106, asks the Court to declare that (1) "under the FLSA an employer who pays more than the federal hourly minimum wage may apply a tip credit to any alleged under-reimbursement subject to the notification and overtime requirements," and (2) "under Nebraska law, an employer may apply any amount of the employee's tips that, when combined with wages, are in excess of the Nebraska minimum wage against any alleged under-reimbursement of expense." Filing 127 at 19. The plaintiff insists that the defendant is not able to raise these grounds in its reply brief. Filing 128 at 16. But the defendant requested this relief in its brief in opposition to respond to issues first introduced in the plaintiff's cross-motion for summary judgment. Filing 129 at 14. Therefore, this Court will address the merits of these requests.

The "tip credit" refers to 29 U.S.C. § 203(m)(2)(A) and Neb. Rev. Stat. § 48-1203(2), allowing an employer to pay tipped employees below the minimum wage, as low as $2.13 per hour, if the employee earns enough tips to make up the difference between the wage paid (the cash wage) and the minimum wage. *See* *Fast*, 638 F.3d at 874-75. The federal tip credit requires far more of employers than the NWHA.

The tip credit is available under the FLSA only if certain conditions are met. First, the employee must fit the criteria for a "tipped employee." 29 C.F.R. § 531.50. Second, the employer must inform the employee that the employer is claiming the tip credit, and third, employees must retain all tips received. 29 U.S.C. § 203(m). Further, employers are "prohibited from using an employee's tips for any reason other than. . . [a]s a credit against its minimum wage obligations to the employee." 29 C.F.R. § 531.52(a). Notice is an essential component of the tip credit; employers are required to inform their employees

both that the employer will be taking the tip credit and *how much* the tip credit will be. §§ 531.50, 531.59(b); *see also* Perrin, 114 F.Supp.3d at 727-28. The regulations further make clear the maximum tip credit an employer may claim is the minimum wage in 29 U.S.C. § 206, $7.25 per hour, less the cash wage paid. 29 C.F.R. § 531.59(b).

In Nebraska, the tip credit is available if the employer pays a cash wage of at least $2.13 per hour and if the employee receives "all gratuities given to them for services rendered." Neb. Rev. Stat. § 48-1203(2). Unlike the federal tip credit, the employer does not have to give notice of the tip credit. *Mays v. Midnite Dreams*, 915 N.W.2d 71, 89 (Neb. 2018). "Instead, an employer must merely prove the employee received tips sufficient to compensate the employee at a rate greater than or equal to the minimum wage." *Id.* Neither the NWHA nor any other state regulations set a cap on how much an employer can claim as a tip credit.

### (a) FLSA Tip Credit

The defendant wants this Court to declare that it may claim a $1.75 tip credit against any alleged under-reimbursement. However, this is not permitted under the regulations. The tip credit under the FLSA is calculated by taking the difference between the federal minimum wage and the cash wage paid. 29 U.S.C. § 203(m)(2)(A). Employers may pay as low as $2.13 to utilize the tip credit, and the maximum tip credit would be the federal minimum wage, $7.25, less the cash wage paid, $2.13, totaling $5.12. "The credit allowed on account of tips may be less than that permitted by statute (minimum wage

required by section 6(a)(1) minus the cash wage paid (at least $2.13)); it cannot be more." 29 C.F.R. § 531.59.[4]

Using this formula, the defendant has no tip credit they can use. The maximum tip credit it can claim for FLSA purposes is the federal minimum wage less the cash wage paid. The federal minimum wage is $7.25, and the defendant paid $7.25. Therefore, the defendant can claim a tip credit of $0. For purposes of the FLSA, drivers were paid $7.25 per hour, and the defendant cannot use the $1.25 per hour tip credit to offset any alleged under-reimbursement.

The defendant points to *Perrin* and argues it provided notice to employees it was taking a $1.75 tip credit, and thus can use that credit to offset an alleged under-reimbursement. 114 F.Supp.3d at 728-29. However, the present case is wholly different than *Perrin* because the regulation was updated in 2020.[5] Section 531.59 was revised to clarify "that the tip credit permitted by section 3(m)(2)(A) is equal to the difference between the Federal minimum wage and the cash wage paid by the employer." Tip Regulations Under the Fair Labor Standards Act (FLSA), 85 Fed. Reg. 86,756-01, 86,774 (Dec. 30, 2020). Thus, the defendant has no tip credit under the FLSA to apply to any alleged under-reimbursement. The regulations state, and agency

_____

[4] This formula is also repeated in the Handbook. Examples in Chapter 30d06(b) demonstrate that an employer is limited to an FLSA 3(m) tip credit calculated by taking the federal minimum wage minus the cash wage paid.

[5] The updated regulation applies to the parties because the new regulation clarifies existing duties and obligations of employers, and does not modify or create new ones. *See Gonzalez v. Chertoff*, 454 F.3d 813, 816-18 (8th Cir. 2006) (quoting *INS v. St. Cyr*, 533 U.S. 289, 321 (2001)); Tip Regulations Under the Fair Labor Standards Act (FLSA), 85 Fed. Reg. at 86,774.

guidance confirms, that the defendant cannot claim a tip credit for purposes of FLSA minimum wage compliance.

### (b) NWHA Tip Credit

The defendant alleges that because there is no maximum on the Nebraska tip credit, it can claim all of the drivers' tips to offset any alleged under-reimbursement. Alternatively, the defendant claims it can use at least the maximum under the FLSA, purportedly $6.87 (the difference between $9.00 (minimum wage) and $2.13 (cash wage)), to offset any under-reimbursement. Filing 127 at 15. For reasons explained above, using the FLSA method for calculating the tip credit, the maximum tip credit the defendant *could* take would be $1.75. 29 C.F.R. § 531.59. However, the Court agrees with the plaintiff that the tip credit is unavailable to offset alleged under-reimbursement.

The plaintiff points to language in Neb. Rev. Stat. § 48-1203(2) that, like 29 U.S.C. § 203(m)(2)(A), requires an employer pay all gratuities to employees. Filing 128 at 17. The plaintiff appears to make a distinction between a "wage" and a "reimbursement" and argues the tip credit is only allowed to offset wages, not offset reimbursements. The defendant argues the NWHA does not contain any obligation for employers to reimburse employees for employer expenses because the NWHA does not have an anti-kickback regulation analogous to 29 C.F.R. § 531.35. Filing 127 at 17. The plaintiff argues the requirement that employees retain all tips essentially constitutes an anti-kickback provision because if an employer is taking employee tips to run the business, the employer cannot claim a tip credit. Filing 128 at 16-18.

The plaintiff's logic makes sense. Imagine an employee had to go to the grocery store before every shift to buy tomato sauce and pepperoni, and the employer reimbursed the employee $2.00 when the cost was really $5.00. If an

employer claims the employee makes enough money in tips to cover the cost of the supplies, the employee is not retaining all of their tips because the employer is essentially pocketing $3.00 worth of the employee's tips. An employer cannot utilize an employee's tips to offset reimbursements because doing so would mean the employee is using their tips to pay for the costs of running a business, rather than using tips to supplement the wages owed to them under Neb. Rev. Stat. § 48-1203.

For these reasons, the defendant cannot retroactively claim a tip credit under the NWHA for unreimbursed expenses the employee made on behalf of the employer.

### 5. FIXED COSTS

The final issue to take up is the parties' discussion of whether an employer must reimburse employees for fixed costs. In the plaintiff's brief in opposition to the defendant's motion for partial declaratory summary judgment, the plaintiff attempted to preempt any "improper reply brief arguments" related to the fixed costs issue and the tip credit (discussed above). The fixed costs issue refers to whether an employer must reimburse an employee for a vehicle's fixed costs that the employee would pay anyway – *i.e.*, vehicle registration and insurance. Neither party seeks the Court's determination on this issue at this time, and, in fact, both parties actively want the Court to avoid it.

The defendant asked the Court to strike the portions of the plaintiff's argument related to fixed costs because of the one-way intervention protection rule. Filing 126 at 5. But the plaintiff did not make an argument about fixed costs – instead, the plaintiff argued that the defendant should not be able to argue about fixed costs. Filing 113 at 38. For reasons described above, the defendant has already waived its one-way intervention protection. However,

24

neither party briefed the issue of whether, as a matter of law, fixed costs should be reimbursed by an employer. The Court will not address the fixed cost issue because both parties insist the other cannot talk about it, and neither party seems prepared for a ruling on this issue.

IT IS ORDERED:

1.  The defendant's motion for partial declaratory summary judgment (filing 106) is granted in part and denied in part as set forth above.

2.  The plaintiff's cross-motion for partial summary judgment (filing 116) is denied.

3.  The plaintiff's motion to strike (filing 114) is denied as moot.

4.  The defendant's motion to strike (filing 125) is denied.

Dated this 21st day of September, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge