IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VINCENT RODRIGUEZ, Individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>GC PIZZA LLC d/b/a "Domino's Pizza,",<br><br>Defendant. | 4:20CV3106<br><br><br>MEMORANDUM AND ORDER |

The plaintiff, Vincent Rodriguez, worked as a delivery driver for GC Pizza, LLC. Representing himself and other similarly situated delivery drivers who were also employed by GC Pizza between December 2018 and May 2022, the plaintiff sued the defendant for alleged violations of the Federal Fair Labor Standards Act and the Nebraska Wage and Hour Act. He alleges that the defendant improperly reimbursed him—and the other collective action and class members—for certain expenses incurred on the job, causing their net wages to fall below federal and state minimum wage rates. (Filing No. 42.)

Before the Court is the plaintiff's renewed unopposed motion related to the parties' agreement to settle the Fed. R. Civ. P. 23 class action and 29 U.S.C. § 216(b) collective action. (Filing No. 169.) Specifically, the plaintiff seeks (1) final certification of an FLSA collective action and certification of a Nebraska class action for settlement purposes, (2) approval of the parties' collective action settlement, (3) preliminary approval of the parties' class action settlement; (4) approval of notice to the putative claimants, and (5) a fairness hearing to be set for final approval of the class action settlement. For the reasons set forth below, the Court will grant the motion.

**BACKGROUND**

This case began in September 2020 when Mr. Rodriguez filed suit against the defendants "individually and on behalf of all other similarly situated delivery drivers." (Filing No. 1.) He alleged that "GC Pizza under-reimbursed its delivery drivers' vehicle costs incurred on the job, thereby reducing their net wages below the federal [and state] minimum wage rates." (Filing No. 170.)[1] The plaintiff also alleged that "GC Pizza applied substantially the same reimbursement formula and rate to all of its delivery drivers during the recovery period." (Filing No. 170.) Or even more simply put, "nominal wages – unreimbursed vehicle costs = subminimum net wages[.]" (Filing No. 42.) He brought causes of action under the FLSA and the NWHA to "recover unpaid minimum wages owed to himself and all similarly situated delivery drivers employed by Defendants at their Domino's Pizza stores."[2] (Filing No. 42.)

In December 2021, the Court conditionally certified an FLSA collective action of "current and former delivery drivers who were employed or are now employed by Gregory Cutchall or GC Pizza LLC from December 14, 2018, to [December 2021]." (Filing No. 73.) The putative class now includes 1,029 delivery drivers who worked for the defendant between December 14, 2018 through May 22, 2022. (Filing No. 170-1.) And in July 2023, a successful mediation led to a settlement agreement. (Filing No. 153.) The plaintiff then filed a motion for preliminary approval of that settlement (Filing No. 162), but the Court denied the motion without prejudice. (Filing No. 167.) The Court advised the parties that to "obtain . . . approval" of the settlement," they could "renegotiate their agreement and remove the provision releasing the defendant from FLSA liability relating to non-opt-in class members." (Filing No. 167.) And the parties did so—the plaintiff filed a renewed motion for preliminary approval with a revised settlement purporting to "address[ ] the Court's concerns" with the first motion. (Filing No. 170.) Like the first motion, this motion is also unopposed. (Filing No. 171.)

---

[1] The plaintiff also alleges the defendants "charged delivery drivers paid at or near the minimum wage for uniform items, which has resulted in minimum wage violations." (Filing No. 42.)

[2] At all times relevant, GC Pizza "owned and operated 17 Domino's pizza franchise stores" in Nebraska and Iowa. (Filing No. 170).

2

**DISCUSSION**

1. **FLSA Collective Action**

The plaintiff first seeks final certification of an FLSA collective action for settlement purposes. The FLSA allows named plaintiffs to sue "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014). And in making that call, "[a] court may consider (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.*

Here, the Court finds that the collective action members are "similarly situated." *Id.* As an initial matter, the plaintiff alleges the class members have suffered from the same "FLSA-violating polic[ies]"—the defendant's mileage reimbursement program and alleged failure to properly reimburse delivery drivers for uniform costs. (Filing No. 42.) Proof of the defendant's conduct in conformity with those policies could therefore "prove[ ] a violation as to all the plaintiffs." *Bouaphakeo*, 765 F.3d at 796. Further, there are no "disparate factual [or] employment settings of the individual plaintiffs" in the Court's view—each worked as a delivery driver for the defendants, used their personal vehicles, were paid around the minimum wage, drove similar distances, and, most importantly, were reimbursed for vehicle expenses at the same rate per delivery. (Filing No. 48-5; Filing No. 48-6; Filing No. 48-3; Filing No. 48-7.) There are no "defenses available to defendant which appear to be individual to each plaintiff" discernible to the Court, either, because the defendant has not identified any or suggested that one might exist. (Filing No. 43; Filing No. 54.) And no "fairness" or "procedural considerations" suggest that final certification would be improper. Thus, the Court finally certifies the collective action of delivery drivers employed by the defendant between December 14, 2018, and May 22, 2022 for settlement purposes.

The plaintiff also asks the Court to preliminarily approve the FLSA collective action settlement. To approve an FLSA settlement, the court must find the matter (1) involves a bona fide wage and hour dispute, and (2) the proposed settlement is fair and reasonable. *See Stainbrook v. Minnesota Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017). To determine whether

3

settlement terms are fair and equitable to all parties, the court may consider a multitude of factors, including (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case. *Id.*

From the outset, the Court notes that the parties have cured the defects in their first settlement agreement—namely, that the terms seemed to "release the defendant from any potential liability which might exist under the FLSA for any employee who chose not to opt into the present lawsuit." (Filing No. 167.) That was problematic, because no person can be bound by or benefit from an FLSA settlement unless the person has affirmatively opted into the FLSA lawsuit. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352 (11th Cir. 1982). Now, though, the settlement agreement reads—in relevant part—that "[r]egardless of the foregoing, only [o]pt-in Plaintiffs shall release FLSA claims." (Filing No. 170-1.) The Court is satisfied that the added provision brings the settlement agreement into compliance with the FLSA.[3]

The Court also finds that this case presents a bona fide wage and hour dispute.[4] "The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Netzel v. W. Shore Group, Inc.*, No. 16-CV-2552, 2017 WL 1906955, at *4 (D. Minn. May 8, 2017). That standard is met here. The plaintiff alleges that the defendant violated the FLSA by under-reimbursing him for car and uniform expenses. (Filing No. 42.) The defendant denies liability, argues it lawfully compensated its delivery drivers, and asserts it owes the plaintiff no wages or damages. (Filing No. 43; Filing No. 170-1.) Thus, a bona fide dispute exists. *See Grove v. Meltech, Inc.*, No. 8:20CV193, 2022 WL 119180, at *3 (D. Neb. Jan. 12, 2022) (bona fide dispute exists

---

[3] In its first Order, the Court also noted it was "poorly situated" to appoint a settlement administrator" given the parties' failure to designate one. (Filing No. 167.) This time around, the parties designated CAC Services Group, LLC as the settlement administrator. (Filing No. 170-1.)

[4] Indeed, while the defendant does not oppose the motion for settlement purposes, it noted in its response that it "disagree[d] with Plaintiff's characterization of the settlement reached between the Parties to the extent it diminishes the merits of GC's considerable defense evidence," like expert opinions it believes "would have allowed a factfinder to conclude GC was at all times in full compliance with applicable law." (Filing No. 171.)

4

where "[t]he settlement class alleges that defendant failed to pay wages required under the FLSA and the defendants deny any wrongdoing and maintain they complied at all times with the FLSA").

Further, the terms of the proposed settlement are fair and reasonable and adequate. By the time settlement was reached, the parties exchanged considerable discovery, including expert reports (and rebuttal reports). (Filing No. 170.) They engaged in hard-fought motion practice, too. The parties both moved for partial summary judgment seeking the Court's determination on a crucial legal issue: the standard to be used in determining whether the defendant reasonably reimbursed its delivery drivers for expenses incurred while using their personal vehicles on the job. (Filing No. 106; Filing No. 113; Filing No. 114; Filing No. 116; Filing No. 125; Filing No. 136.) Following a ruling on those motions, the parties reached a settlement agreement after a full day of mediation with Michael G. Mullin, one of Nebraska's preeminent neutrals. (Filing No. 170); *Netzel*, 2017 WL 1906955, at *6 ) ("Courts have held that negotiations involving counsel and a mediator, like the present case, raise a presumption of reasonableness.")

As the plaintiff acknowledges, his ultimate likelihood of success at trial is uncertain given the novel issues in this case. (Filing No. 170.) But it *is* certain that continued litigation would cost the parties increasing time and money. (Filing No. 170.) For those reasons, the plaintiff's counsel—well-versed in handling claims like these—recommends this settlement be approved. (Filing No. 170.) The defendant's counsel agrees, and that too carries some weight. (Filing No. 171); *Grove*, 2022 WL 119180, at *2 (stating that courts should weigh "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation" in evaluating a proposed FLSA settlement.").

In sum, considering the disputed issues, circumstances, defenses, and the potential risks and likelihood of success of pursuing litigation, the Court finds that the consideration provided under the settlement agreement constitutes reasonable and fair value given in exchange for the release of claims against the defendant.

2. **NWHA Class Action**

The plaintiff also seeks preliminary certification of a *class* action for claims under the NWHA. (Filing No. 170.) Fed. R. Civ. P. 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims

5

or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Those requirements are satisfied here.

The numerosity requirement is met because 1,029 potential class members have been identified. (Filing No. 170.) Commonality is satisfied because the legal and factual issues surrounding the defendants' course of conduct arise out of the same alleged wrongdoing: under-reimbursement for vehicle expenses and improper deductions for uniform items. (Filing No. 170.) Typicality is present for the same reason: typicality means that there are other members of the class who have the same or similar grievances as the plaintiff. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 (8th Cir. 1982). And adequacy of representation is present because there's no conflict of interest between the named plaintiff and the class he seeks to represent—he possesses the same interest and injury as the class members. *See Amchem*, 521 U.S. at 625-26.

If the requirements of Rule 23(a) have been met, a class action may be maintained in the circumstances defined by Rule 23(b)(1), (2), or (3). Certification under Rule 23(b)(3) is appropriate here, because "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Predominance exists when common questions concerning a significant aspect of a case can be resolved in a single action. *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003).

Here, the alleged violations of the FLSA and NWHA predominate individualized questions of damages or the cause thereof. *See id.; in re Workers' Compensation*, 130 F.R.D. 99, 108 (D. Minn. 1990). The legal issues surrounding the defendant's alleged violation(s) of statutory requirements indicates that a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615; Fed. R. Civ. P. 23(b)(3).

Finally, the Court has reviewed the proposed class action settlement (Filing No. 170-1) and finds that it can likely be approved under Rule 23(e)(2) for the reasons discussed above. *See, e.g., Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992 (8th Cir. 2003) ("In approving a class settlement, the district court must consider whether it is fair, reasonable, and adequate.").

3. **Notice**

Two loose ends remain. The first is the parties' proposed notice to collective action and class members. The Court previously found the proposed notice deficient because it suggested that "*all* class claims arising under state or federal law, including claims arising under the FLSA, will be extinguished, even if class members did not opt into the § 216(b) action." (Filing No. 167.) The first proposed notice submitted by the plaintiff provided that "[e]ach Class member shall release any and all wage and hour claims of any kind . . . related in any way to mileage reimbursement . . . including any claims under the FLSA."). (Filing No. 163-2.) And it warned collective action members that if they "do not affirmatively opt out from the Settlement Agreement . . . you will receive a Settlement Award and . . . you release all local, state, and federal wage and hour claims, and related claims . . . . Failure to affirmatively opt out . . . will result in your inclusion in the Settlement Class and the release of all your local and state, and federal wage and hour claims and related claims against Defendant that accrued during the Class Period." (Filing No. 163-2.) Those statements run afoul of the FLSA.[5] *See, e.g., Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) (holding that "a putative plaintiff must affirmatively opt into a[n FLSA] action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action."). So the Court found the "proposed notice" could not "be approved" as written. (Filing No. 167.)

When the plaintiff submitted a renewed motion, he again included a proposed notice. (Filing No. 170-2). But this notice was identical to the previous one. No changes had been made in response to the Court's concerns, so the Court gave the plaintiff fourteen days to file a revised proposed notice. (Filing No. 172). The plaintiff filed a new proposed notice, Filing No. 173-1, and this time around, it advises class and collective action members that "[o]nly class members that previously submitted a consent to join the FLSA claim will release claims under the FLSA," for example. (Filing No. 173-1). The revised proposed notice also makes clear that class members are only releasing "wage and hour claims of any kind under *Nebraska* law," not the FLSA. (Filing No.

---

[5] They don't, of course, pose any problems for non-FLSA *class* action purposes. *See Hipp*, 252 F.3d at 1216 ("In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out.") (citing Fed. R. Civ. P. 23(c)(3)).

173-1) (emphasis added). Those revisions cure the substantive deficiencies previously identified by the Court.

The Court, however, also identified inconsistencies between the revised proposed notice and the settlement agreement relative to the exclusion and objection procedures for class members. The Court directed the parties to file a proposed notice mirroring the terms of the settlement agreement. (Filing No. 174). The plaintiff did so (Filing No. 175-1), and the Court can now approve the proposed notice, though it will require one change to be made: the proposed notice lists an incorrect address for the Clerk of the Court. (Filing No. 175-1). Page two of the proposed notice should be revised to include Roman L. Hruska Federal Courthouse, 111 South 18th Plaza Suite 1152, Omaha, NE 68102 as the address where objections should be mailed.

Further, the proposed notice comports with Rule 23(c)(2)(B). The notice will be sent directly—by first-class mail—to each class member at their last known address. (Filing No. 170-1); *see Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011) ("First class mail is generally considered to be the best form of notice"). The notice satisfies the requirements of Rule 23 and due process, too. *See* Rule 23(e)(1)(B). Thus, the Court will approve the proposed notice.

4. **Attorney's Fees**

The last issue is attorney's fees. The FLSA entitles a prevailing plaintiff to an award of fees and costs. *See* 29 U.S.C. § 216(b) (a court "shall . . . allow a reasonable attorney's fee to be paid."). So does the NWHA. *See* Neb. Rev. Stat. § 48-1206(5) ("The court in which any action is brought under this subsection shall . . . allow costs of the action and reasonable attorney's fees to be paid by the defendant.").

Here, the settlement agreement provides that class counsel will recover, subject to court approval, attorney fees in an amount not to exceed one-third of the total settlement value along with costs of this action. (Filing No. 170-1.) The Court will consider the propriety of that award when a separate motion for fees and costs is filed, which will be addressed at the fairness hearing. *See Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855-58 (8th Cir. 2021); *In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 858 (8th Cir. 2024).

8

**CONCLUSION**

In sum, the Court finally certifies the FLSA collective action and preliminary certifies the class action for settlement purposes. The Court also preliminarily approves the parties' collective and class action settlement. And the Court will approve the parties' proposed notice to collective and class action members, with the one modification described above and below. Accordingly,

**IT IS ORDERED:**

1. The plaintiff's unopposed renewed motion for (1) certification of a collective and class action for settlement purposes, (2) approval of a collective action settlement, (3) preliminary approval of a class action settlement, (4) approval of notice to putative claimants, and (5) scheduling a hearing for final approval of the parties' class action settlement agreement (Filing No. 169) is granted.

2. With respect to the plaintiff's FLSA claim:
    a. For settlement purposes only, this action may be maintained as an FLSA collective action under 29 U.S.C. § 216(b).
    b. The Court finally certifies a collective action consisting of all current and former delivery drivers who were employed or are now employed by GC Pizza LLC from December 14, 2018 to May 22, 2022.
    c. Mark Potashnick of Weinhaus & Potashnick and Edward Weinhaus of LegalSolved, LLC are appointed as counsel for the collective action.
    d. The Court will reserve its formal determination of approval of the FLSA claims in the settlement until the time for determining final approval of the NWHA class action claims.

3. With respect to the plaintiff's NWHA claim:
    a. For settlement purposes only, this action may be maintained as a class action under Fed. R. Civ. P. 23. The Court certifies the settlement class as all current and former delivery drivers who were employed or are now employed GC Pizza LLC from December 14, 2018 to May 22, 2022.

    b. The agreements, terms, and conditions of the settlement agreement (Filing No. 170-1) are preliminarily approved pending a fairness hearing.

    c. Vincent Rodriguez is designated as the settlement class representative.

    d. Mark Potashnick of Weinhaus & Potashnick and Edward Weinhaus of LegalSolved, LLC are appointed as settlement class counsel.

4. CAC Services Group, LLC is appointed as settlement administrator.

5. Having reviewed the proposed notice of class and collective action settlement, the Court approves the notice but will require that it be revised to include the correct address for the Court: Roman L. Hruska Federal Courthouse, 111 South 18th Plaza Suite 1152, Omaha, NE 68102. The parties shall provide the settlement administrator with the class list detailed in the settlement agreement on or before October 24, 2024. The settlement administrator shall cause the notices to be sent to class and collective action members on or before November 7, 2024, pursuant to the notice plan set forth in the settlement agreement. (Filing No. 170-1).

6. Members of the settlement class who wish to exclude themselves from the class must submit a written request for exclusion postmarked by December 26, 2024. The request for exclusion must be made to the settlement administrator in accordance with the instructions set forth in the notice. (Filing No. 175-1).

7. Class members who do not submit timely and valid requests for exclusion shall be bound by all subsequent proceedings, orders, and the judgment in this litigation should the proposed settlement receive final approval.

8. Any class member who does not request exclusion may file a written objection with the Court and serve a copy on plaintiff's and defendant's counsel no later than December 26, 2024, in accordance with the instructions set forth in the notice. (Filing No. 175-1).

9. Any objection shall substantially comply with the requirements set forth in the proposed notice (Filing No. 175-1). Unless otherwise determined by the Court, any class member who does not submit a statement of objection that substantially complies with the manner specified in the notice will have waived any such objection.

10. The fairness hearing shall be held on <u>February 10, 2025, at 10:00 a.m</u>. before the undersigned in <u>Courtroom 1, Robert V. Denney Federal Building, 100 Centennial Mall North, Lincoln, Nebraska</u>. The time and date of the fairness hearing will be included in each notice of settlement. The purpose of the fairness hearing will be to:
    a. Determine whether the proposed settlement is fair, reasonable, and adequate, and should be finally approved;
    b. Determine whether an order and judgment should be entered dismissing the claims of the class members and bringing the litigation of those claims to a conclusion;
    c. Consider other settlement-related matters, including appropriate attorney's fees.

    The Court may adjourn, continue, or reconvene the fairness hearing by oral announcement without further notice to the class members, and the Court may consider and grant final approval of the proposed settlement, with or without minor modification, and without further notice to class members.

    The parties and any objectors may appear at the fairness hearing in person or, upon request, by telephone or videoconference.

11. A settlement class member who requests exclusion or objects can withdraw their request for exclusion or objection prior to the fairness hearing by submitting a signed written request or email containing an electronic signature to the settlement administrator stating their desire to withdraw their request for exclusion or objection.

12. On or before <u>October 21, 2024</u>, the defendant shall serve all notices required by the Class Action Fairness Act, 28 U.S.C. § 1715(d), and shall promptly file a declaration with the Court certifying that such notices were served.

13. During the Court's consideration of the proposed settlement and pending further order of the Court, all proceedings in this action, other than proceedings necessary to carry out the terms and provisions of the proposed settlement, or as otherwise directed by the Court, are stayed and suspended.

14. Until the Court holds the fairness hearing and determines the matters set forth in this order, and through the effective date of the settlement agreement, all settlement class members except those who have requested exclusion shall be barred from asserting any claims for which a release will be given if the Court approves the proposed settlement.

15. On or before January 6, 2025, settlement class counsel shall file a motion for final approval of the settlement agreement, along with an affidavit from a representative of the settlement administrator confirming that notice has been accomplished in accordance with the provisions above.

16. Settlement class counsel shall file their application for an award of attorney fees, costs, and any motion for Class Representative Service Award by on or before January 10, 2025, for consideration at the fairness hearing. Any reply in further support of the settlement agreement, attorneys' fees, and expenses, or in response to any written objection, shall be filed on or before January 17, 2025.

Dated this 10th day of October, 2024.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge