IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VINCENT RODRIGUEZ, Individually and on behalf of all others similarly situated; | |
| Plaintiff, | **4:20CV3106** |
| vs. | |
| GC PIZZA LLC, d/b/a "Domino's Pizza," | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on the plaintiff's motion for approval of a collective action settlement and final approval of a class action settlement (Filing No. 180) and application for service award, fees, and costs (Filing No. 182). The Court received the statements of counsel at the fairness hearing (Filing No. 184) and the notice requirements of 28 U.S.C. § 1715 have since been satisfied. Ninety days have passed since notice was given to the appropriate officials and counsel did not receive any objections (Filing No. 186) to the proposed settlement. A review of the Court's docket shows that none have been filed, either. The Court will therefore grant the motions.

## BACKGROUND

The plaintiff, Vincent Rodriguez, filed this action in September 2020. (Filing No. 1). He alleged, "individually and on behalf of all other similarly situated delivery drivers," that GC Pizza[1] used a flawed method to reimburse drivers for using their own vehicles, which caused the drivers net wages to fall below the federal and state minimum wages during some or all workweeks. (Filing No. 42 at 1-2). Mr. Rodriguez also alleged that delivery drivers paid at or near the minimum

---

[1] At all times relevant, GC Pizza "owned and operated 17 Domino's pizza franchise stores" in Nebraska and Iowa. (Filing No. 170).

wage for uniform items, which resulted in minimum wage violations.  (Filing No. 42 at 3). The plaintiff brought claims under the Fair Labor Standards Act and the Nebraska Wage and Hour Act seeking to recover those unpaid minimum wages. (Filing No. 42 at 2).

Just over one year later, the Court—over the defendant's objection—conditionally certified an FLSA collective action of "current and former delivery drivers who were employed or are now employed by Gregory Cutchall or GC Pizza LLC from December 14, 2018, to [December 2021]." (Filing No. 73). Cross motions for partial summary judgment (and motions to strike) followed, and the Court (Gerrard, J.) granted the defendant's motion in part, denied the plaintiff's cross motion, and provided guidance as to the parties' methods and burdens of proof. (Filing No. 136 at 18-19). Discovery—which had been stayed while the cross motions for partial summary judgment were pending—resumed after that. (Filing No. 132). The parties exchanged expert witness reports and rebuttals, and the defendant prepared to file a motion to exclude the plaintiff's expert's opinions. (Filing No. 181 at 4).

Further motion practice proved unnecessary, however. In July 2023, the parties mediated for a full day and reached an agreement to settle this case. (Filing No. 181 at 4). The plaintiff filed an unopposed motion for preliminary approval of the parties' settlement two months later. (Filing No. 162). The Court denied that motion without prejudice after identifying a defect[2] in the settlement agreement and proposed notice to collective and class action members. (Filing No. 169). The parties cured that defect, and the Court granted the plaintiff's renewed motion. (Filing No. 176).

The Court, among other things, finally certified the FLSA collective action, preliminarily approved the FLSA collective action settlement, found that this action could be maintained as a class action; the prerequisites to class certification under Rule 23(a) had been satisfied; and certification of the settlement class was superior to other available methods for the fair and efficient

---

[2] The first proposed notice suggested that "*all* class claims arising under state or federal law, including claims arising under the FLSA, will be extinguished, even if class members did not opt into the § 216(b) action"—something that contradicts the FLSA. (Filing No. 167); *see e.g., Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1216 (11th Cir. 2001) (holding that "a putative plaintiff must affirmatively opt into a[n FLSA] action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action."). The revised proposed notice cured that issue and accurately advised class members which claims they were releasing (Filing No. 175-1), and it was approved by the Court. (Filing No. 176 at 8).

resolution of this controversy, satisfying Rule 23(b)(3). (Filing No. 176). The Court also designated a class representative, appointed settlement class counsel and a claims administrator, and scheduled a fairness hearing. (Filing No. 176). The Court has also reviewed the notice submitted by the parties, approved it as to form, and approved their plan for directing notice to the class members, finding it provided the best notice practicable under the circumstances and complied with Rule 23 and the requirements of due process. (Filing No. 176).

Notice was sent to identified class members, setting a deadline for the class members to request exclusion from the class or object to the settlement. (Filing No. 183). Neither the Court or the claims administrator received any objection that the proposed settlement was unfair to the settlement class. (Filing No. 183). Accordingly, the plaintiffs filed the present motions. A fairness hearing was held, at which no objecting class members or other objectors appeared. (Filing No. 184). At the time of the fairness hearing, however, the defendant had not complied with the notice requirements of 28 U.S.C. § 1715(b). The defendant has now done so. (Filing No. 185). No objections or request for a hearing have been received by counsel or filed, and ninety days have passed since the date the notices were served on February 14, 2025. (Filing No. 185). Therefore, the Court now has the authority to rule on the plaintiff's motions regarding the final approval of the collective action settlement and final approval of a class action settlement. The Court may also rule on class counsel's Application for Service Award, Fees and Costs.

## DISCUSSION

### 1. FLSA Collective Action

In its October 10, 2024 Memorandum and Order, the Court finally certified a collective action of "delivery drivers employed by the defendant between December 14, 2018, and May 22, 2022 for settlement purposes." (Filing No. 176 at 3). The Court has also preliminarily approved the collective action settlement.[3] (Filing No. 176 at 3-5). Now, the Court finally approves the collective action settlement. "[C]onsidering the disputed issues, circumstances, defenses, and the

---

[3] The Eighth Circuit has "acknowledged a split among the circuits over whether judicial approval is required for all FLSA settlements" but has "declined to take a side on the issue." *Vines v. Welspun Pipes Inc.,* 9 F.4th 849, 853 (8th Cir. 2021). Out of an abundance of caution, and upon the request of the parties, the Court will approve the FLSA Settlement as well as the class settlement on state law claims. *See, e.g., Walkinshaw v. CommonSpirit Health*, 2023 WL 1995281, at *3 (D. Neb. Feb. 14, 2023).

3

potential risks and likelihood of success of pursuing litigation," the Court reaffirms its finding that the consideration provided under the settlement agreement constitutes reasonable and fair value given in exchange for the release of claims against the defendant. (Filing No. 179 at 5). Thus, the settlement of the plaintiff's FLSA collective action claims will be approved.

### 2. NWHA Class Action

The Court has also certified a *class* action for the plaintiff's NWHA claim and has found that the proposed class action settlement "can likely be approved under Rule 23(e)(2)[.]" (Filing No. 179 at 6). The parties now seek final approval of the class action settlement.

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Fed. R. Civ. P. 23(e). The Court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (9th Cir. 2005); *In re BankAmerica Corp. Secs. Litig.*, 350 F.3d 747, 751 (8th Cir. 2004); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The Court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017); *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015); *see Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 907 (8th Cir. 2018). If the proposed settlement would bind the class members, the Court may approve it only after a hearing and upon finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). But a class action settlement is a private contract negotiated between the parties. *Marshall*, 787 F.3d at 509; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934. A settlement agreement is presumptively valid. *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

The Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Grunin*, 513 F.2d at 123. In examining a proposed settlement for approval or disapproval, the Court does not try the case; the very purpose of a compromise is to avoid the delay and expense of a trial. *Id.* at 124; *see also DeBoer,* 64 F.3d at 1178. So, the Court need not make a detailed investigation consonant with trying the case; it must, however, provide an appellate court with a basis for determining that its decision rests on well-reasoned conclusions, and is not mere boilerplate. *Keil,* 862 F.3d at 693; *In re Wireless Tel.*

*Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932-33. The views of the parties to the settlement must also be considered; if only a handful of members object to the settlement, that weighs in favor of final approval. *DeBoer,* 64 F.3d at 1178.

To determine if the settlement is fair, reasonable, and adequate, the Court considers whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate," and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Court finds those marks are met here. The class representative, Mr. Rodriguez, "substantially assisted counsel in achieving this settlement on behalf of all of Defendant's delivery drivers who have been employed during the recovery period." (Filing No. 181 at 12). He "provided ongoing assistance to counsel," "endeavored to protect the interests of all of Defendant's delivery drivers and to obtain a substantial recovery on their behalf," and "participated throughout the day-long mediation," even "vigorously negotiat[ing] on behalf of all of Defendant's delivery drivers." (Filing No. 181 at 13). For those reasons, the class representative has adequately represented the class. *See Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 860 (S.D. Iowa 2020).

Class counsel's representation has also been adequate, "as demonstrated by their involvement in discovery and participation in the prosecution of this case." *In re Pork Antitrust Litig.*, 2022 WL 4238416, at *1 (D. Minn. Sept. 14, 2022); (Filing No. 181 at 18-20). Class counsel "are accomplished litigators with ample experience in class actions and complex litigation." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020); (Filing No. 181-2 at 1-13). That factor too favors final approval.

The Court is also satisfied that the settlement agreement was "negotiated at arm's length." The parties engaged in motion practice at the preliminary certification stage and at partial summary judgment, exchanged extensive discovery, and reached the settlement agreement after a full day of mediation. (Filing No. 176 at 5). Further, the Court sees no evidence of collusion or that class counsel placed their interests above those of the settlement class when negotiating the settlement. As class counsel confirmed at the fairness hearing, *relief to the settlement class* was the "driving force" behind the settlement agreement, and attorney's fees, costs, and expenses were negotiated separately.

The "relief provided for the class"—a total settlement value of $500,000.00—is also adequate, in the Court's view, considering that the plaintiff has avoided potentially lengthy and complex litigation without objection from the settlement class. (Filing No. 181 at 7); (Filing No. 183 at 3); *see Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 230 (S.D. Iowa 2009) ("Such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement"). As class counsel stated at the fairness hearing, no jury has ever decided the issues involved in cases like this, which would come down to a battle of class counsel's experts against defense counsel's expert. Finally, the Court finds that the "proposal treats class members equitably relative to each other." While some "opt-ins will receive less than others—*based on relatively shorter employment*—no opt-in will receive less than $25.00." (Filing No. 181 at 18) (emphasis added).

The Court has also considered the other four factors "traditionally"[4] applied by courts in the Eighth Circuit: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement[.]" *Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 860 (S.D. Iowa 2020) (internal quotations omitted) (quoting *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988)). As class counsel stated at the fairness hearing, claims like these have never been before a jury and can take years to resolve. The defendant's financial condition favors approval, too—it sold all its assets and ceased operating in May 2022. Perhaps most notably, there was *no* opposition to the settlement, at least in the form of opt-outs or objections. For these additional reasons, the Court concludes that the proposed settlement is fair, adequate, and reasonable.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members was adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B). Because an action

---

[4] "The specific considerations in Rule 23(e)(2)(A)–(D) were added as part of amendments to the Federal Rules of Civil Procedure that went into effect in December 2018. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement." *Swinton,* 454 F. Supp. 3d at 860; *see* Rule 23 Advisory Committee Notes ("The goal of this amendment is not to displace any factor [developed by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed settlement be given to the class. *Grunin*, 513 F.2d at 120; *see Pollard*, 896 F.3d at 906. The notice given must be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Grunin*, 513 F.2d at 120; *see Pollard*, 896 F.3d at 906. In addition, the notice must reasonably convey the required information, and it must afford a reasonable time for those interested to make their appearance. *Grunin*, 513 F.2d at 120. The contents must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options open to them in connection with the proceedings. *Id.* at 122.

The notice given here met those requirements. It informed the class members of the action and their options, accurately characterized all the pertinent terms of the settlement agreement, including the fact that "attorneys' fees, litigation costs, mediation fees, settlement administration costs, and a $5,000.00 service award for the Named Plaintiff" would be deducted from the total amount of the settlement. (Filing No. 175-1 at 1). The notice also afforded the class members a reasonable opportunity to object. As established in the Court's preliminary order approving notice, notices were sent directly to class members using the best available contact information. (Filing No. 179 at 8). In short, the notice satisfied the requirements of Rule 23 and due process.

For those reasons, the Court finds that the proposed settlement is fair, reasonable, and adequate and that the notice sent to class members satisfied Rule 23(c)(2)(B). The Court will therefore finally approve the proposed class action settlement.

### 3. Attorney Fees and Expenses

In a certified class action, the Court may award reasonable attorney's fees and non-taxable costs that are authorized by the parties' agreement. Fed. R. Civ. P. 23(h).[5] Settlement class counsel has moved for an award of fees and expenses pursuant to Fed. R. Civ. P. 54(d)(2). (Filing No. 182). The proposed settlement agreement provides that class counsel will recover, subject to court approval, attorney fees in an amount not to exceed one-third of the total settlement value (or

---

[5] Both the FLSA and the NWHA allow a prevailing plaintiff to recover fees and costs. *See* 29 U.S.C. § 216(b) (a court "shall . . . allow a reasonable attorney's fee to be paid."); Neb. Rev. Stat. § 48-1206(5) ("The court in which any action is brought under this subsection shall . . . allow costs of the action and reasonable attorney's fees to be paid by the defendant.").

$166,666.67) along with costs of this action. (Filing No. 181-1 at 9). The Court bears the responsibility of scrutinizing attorney fee requests, and the burden rests with counsel to establish a factual basis to support the award. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

Courts utilize two main approaches to analyzing a request for attorney fees. *Johnston*, 83 F.3d at 244. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. *Id.* Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. *Id.* at 244-45. The percentage-of-the-benefit method is recommended in common-fund cases. *Id.* But the Court has the discretion to use either method. *Target,* 892 F.3d at 976-77; *see Rawa,* 934 F.3d at 870; *Keil,* 862 F.3d at 701; *In re U.S. Bancorp. Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *Johnston,* 83 F.3d at 245. Ultimately, "[t]he amount of fees awarded must be reasonable." *Johnson, Tr. of Operating Eng'rs Local #49 Health and Welfare Fund v. Charps Welding & Fabricating, Inc.,* 950 F.3d 510, 526 (8th Cir. 2020).

Under *either* the lodestar or percentage-of-the-benefit method, the Court may determine the reasonableness of the fee award by considering relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974). *Target,* 892 F.3d at 977; *Keil, 862 F.3d at 701.* Those factors are:

1. The time and labor required;

2. The novelty and difficulty of the questions;

3. The skill requisite to perform the legal service properly;

4. The preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee;

6. Whether the fee is fixed or contingent;

7. Time limitations imposed by the client or the circumstances;

8. The amount involved and the results obtained;

9. The experience, reputation, and ability of the attorneys;

10. The "undesirability" of the case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

*Johnson,* 488 F.2d at 717-19.

The "percentage of the benefit" here is one-third of the total settlement amount.[6] That's well in line with other attorney's fee awards in this Circuit. *See Rawa*, 934 F.3d at 870; *Target, 892 F.3d at 977*; *Keil*, 862 F.3d at 701; *Caligiuri*, 855 F.3d at 865-66; *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *In re Life Time Fitness*, 847 F.3d at 623. The award is further supported by a lodestar cross-check. The standards to be considered in calculating attorneys' fees under a "lodestar" approach include (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin,* 513 F.2d at 127. But the starting point is multiplying hours and typical hourly rates; only after such a calculation do other, less objective, factors come into the equation. *Grunin*, 513 F.2d at 127.

The term "reasonable hourly rate" has been defined as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad,* 643 F.2d at 1313. Generally, attorneys have substantiated their fee claims by providing detailed records relating to standard hourly rates for themselves or their firm and a complete breakdown of who spent what time in what endeavors. *Id.*; *see Grunin,* 513 F.2d at 127. Here, class counsel is only receiving 87% of what their lodestar fee would have been. The Court finds that reasonable considering the quality of the work and the results obtained, and the contingency basis on which representation was undertaken. *See Rawa,* 934 F.3d at 870; *Keil,* 862 F.3d at 701; *Caligiuri,* 855 F.3d at 866; *Huyer,* 849 F.3d at 399-400.

The Court is aware that the separate negotiation of attorney fees may present an opportunity for abuse. *See Johnston,* 83 F.3d at 246 n.11. But the Court finds no basis to suspect any type of abuse or collusion here. The Court also notes that the potential award of fees and expenses was

---

[6] The Court is aware that administrative costs and litigation expenses are to be paid from the settlement fund. The Court has considered those costs, and they are justifiable. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017).

disclosed in the notices to class members ([Filing No. 170-2 at 1](#)) and no objections to the amount of the fees or the fact that costs would be deducted from the settlement amount were received. *See In re U.S. Bancorp.*, 291 F.3d at 1038. Given the time and skill necessary to litigate this case, including an appeal, and the result obtained in a contingency-fee case, the Court finds that the requested attorney's fees and non-taxable costs are reasonable, and will grant them.[7]

### 4. Service Award

The class representative seeks a service award of $5,000. ([Filing No. 182](#)). It is within the Court's discretion to award service awards to a plaintiff who served as a class representative, considering the actions he took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort he expended in pursuing the litigation. *See Caligiuri*, 855 F.3d at 867. There has been no objection to the service award proposed here, and the Court finds that it is fair, reasonable, and properly based in the benefit to the class members generated by the litigation. The Court will approve the award.

### 5. Settlement Administrator's Fees and Costs

Finally, class counsel seeks an award—pursuant to the settlement agreement—of $11,000.00[8] for fees and costs incurred by CAC Services Group, LLC, the Court-appointed settlement administrator. ([Filing No. 181-1 at 2](#), 7, 9, 15-16). The Court has considered those fees and costs and finds them reasonable. Thus, the Court will approve an award of $11,000.00 from the total settlement amount to CAC Services Group. Accordingly,

---

[7] The Eighth Circuit has held that, assuming judicial approval of FLSA settlements *is* required, district courts have "the authority to ensure [(1)] the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and [(2)] there was no conflict of interest between the attorney and his or her client." *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 854-55 (8th Cir. 2021). Here, the Court has reviewed the entire record, and based on the comments of plaintiff's counsel at the fairness hearing, the Court concludes that the attorney fees were separately negotiated and that there was no conflict of interest between class counsel and their client.

[8] CAC Services Group says it incurred $11,996.87 in "costs associated with the administration of this matter." ([Filing No. 183 at 3](#)). At the fairness hearing, however, class counsel clarified that the terms of the contract between CAC Services Group and class counsel provided that CAC Services could only recover *up to* $11,000 for its fees and costs, and limited his request to that amount.

**IT IS ORDERED:**

1. The plaintiff's consent motion for approval of a collective action settlement and final approval of a class action settlement (Filing No. 180) is granted.

2. The plaintiff's application for service award, fees, and costs (Filing No. 182) is granted.

3. The plaintiff's counsel is hereby awarded attorney's fees in the amount of $166,666.67.

4. The plaintiff's counsel is also awarded $49,135.76 (for Mr. Potashnick) and $834.32 (for Mr. Weinhaus) in reimbursement of litigation expenses they incurred and disbursed in prosecuting this litigation.

5. The settlement agreement is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the settlement agreement.

6. The distribution plan for the net settlement fund set forth in the settlement agreement provides a fair and reasonable basis upon which to allocate the proceeds of the settlement fund, and that distribution plan is approved.

7. Upon the effective date, as for the class action claims under the NWHA, the plaintiff and the settlement class members who have not timely and properly opted out and excluded themselves from the settlement, and anyone who opted in for the FLSA class action, shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (individually or in a representative capacity) any lawsuit, action, or proceeding in any jurisdiction asserting or based upon any claims or causes of action released in the settlement and this memorandum and order and accompanying judgment, and from soliciting or encouraging any other class members to participate in any such lawsuit, action, or proceeding.

8. Pursuant to Rule 23, the Court finally certifies Mark Potashnick of Weinhaus & Potashnick and Edward Weinhaus of LegalSolved, LLC as settlement class counsel.

11

9.  Vincent Rodriguez is awarded $5,000 for his service as class representative.

10. The settlement administrator may be paid from the settlement fund its actual fees and costs incurred of $11,000.00, for notice and settlement administration services.

11. Upon the effective date, as defined in the settlement agreement and by operation of this memorandum and order, the terms of the settlement agreement (including all exhibits to it) and the terms of this memorandum and order are forever binding on and shall have res judicata and preclusive effect in all pending and future lawsuits maintained by settlement class members, as well as their agents, heirs, executors, administrators, successors, and assigns, against any of the released parties in any forum of any kind. The plaintiff and each settlement class member shall be bound by the terms of the settlement as set forth in the settlement agreement and this memorandum and order; shall be deemed to have released, dismissed and forever discharged the released claims against the released parties, with prejudice and on the merits, without costs to any of the parties; and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any of the released claims against any of the released parties in any forum of any kind, whether directly or indirectly, whether on their own behalf or otherwise.

12. This memorandum and order and accompanying judgment and the stipulation of settlement may be filed in any action against or by any released person to support a defense of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. In the event that the settlement does not become final as contemplated by the stipulation of settlement, this memorandum and order and the accompanying judgment shall automatically be rendered null and void and shall be vacated and, in such event, all orders entered, and releases delivered in connection with them shall be null and void.

14. Neither the stipulation of settlement nor this memorandum and order and accompanying judgment constitute an admission of liability, fault, or wrongdoing on the part of the defendant.

15. Without affecting the finality of this memorandum and order and accompanying judgment in any way, the Court retains exclusive and continuing jurisdiction over the administration, consummation, and enforcement of the settlement agreement.

16. Pursuant to the parties' settlement agreement, the parties shall file a joint stipulation of dismissal with prejudice within three days of the effective date of the agreement.

Dated this 2nd day of June, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge